# COURT OF ERRORS AND APPEALS,

#### IN

## NEW ORLEANS, JULY, 1843.

---

PRESENT:

Hon. THOMAS C. NICHOLLS.
Hon. GEORGE ROGERS KING.
Hon. ISAAC JOHNSON.

---

## THE STATE v. JAMES NOLAN.

8r 513
48 601

8r 513
f118 804

The incompetency of some of the grand jurors by whom a bill of indictment has been found, is not cured by the omission to urge the objection on the first day of the term of the District Courts in the country parishes. The 5th sect. of the stat. of 6 March, 1840, applies only to the formalities to be observed in the summoning, formation, and drawing of the grand jury, not to the want of qualification of any member of the jury. But an objection founded on such want of qualification is inadmissible on a motion in arrest of judgment, when the party is confined to matters apparent on the record. Nor will a demurrer on the part of the State to a motion in arrest of judgment, made on the ground of such want of qualification, though amounting to an admission of the want of qualification, obviate the objection that the error complained of was not apparent on the face of the record.

An indictment which charges an offence to have been committed "at the parish of C——" is sufficient. The omission to designate a particular place within the parish, and the use of the word at for in, are immaterial. The offence is properly charged to have been committed within the parish instead of within a county.

In criminal proceedings no foreman is appointed to a jury ; nor is it necessary that the verdict should be signed.

A judgment condemning a criminal to three years imprisonment at hard labor, and to pay the costs of the prosecution or to remain imprisoned one day longer, is not illegal in a case in which the three years and one day do not exceed the maximum of punishment allowed by law.

APPEAL from the District Court of Caddo, *Boyce*, J.

*Preston*, Attorney General, for the State.

*Crain*, *Tuomey* and *Hiestand*, for the appellant.

NICHOLS, J.   The accused was convicted before the inferior court, of the crime of horse stealing, and has taken an appeal to this court, upon an exception to the opinion of the judge, *a quo*, on a motion in arrest of judgment, for reasons stated in the motion itself.

Judgment was sought to be arrested in the lower court, on the ground that four of the grand jurors by whom the bill of indictment was found, were not qualified, as the law requires, to act as jurors.   This motion was met, on the part of the State, by a *demurrer*, which was sustained by the court, and the motion to arrest the judgment overruled.

It is contended, on the part of the State, that the incompetency of the jurors is cured, by the provisions of the fifth section of the act of the Legislature, entitled, " An act directing the mode of composing and drawing juries for the District Courts," approved March 6th, 1840.

This section declares ; " That all and every objection which might or could be made on account of any defect or informality which may have occurred, either in the *formation, drawing*, or *summoning* of said juries, under the provisions of this act, or any other defect whatever in the *construction* of said juries, shall be made on the first day of the terms of the said District Courts, and not afterwards."

The provisions of the act of 1840, are not confined to the grand jury *alone*, but refer to the whole panel ; to the traverse, as well as to the grand jury, to civil as well as criminal cases.   Were such a construction as that urged on the part of the State, adopted by the court, it would abrogate entirely the right of challenge, would repeal, *in toto*, the various statutes passed by the Legislature upon the subject of juries, believed now to be in force, thereby annihilating, at a blow, all those safeguards established by the lawgiver, for the purpose of insuring a fair and impartial trial. Thus, a party litigant on the civil docket, having no apparent interest in analyzing the composition and constituent elements of a grand jury, would be frequently entrapped.   Conscious that no criminal prosecution could be directed against him, it could scarcely be expected or required, that he should pry into a matter which evidently concerned him not, under the heavy penalty, in case of neglect, of being deprived of the right of submitting his case to a competent and disinterested jury of the country.   Yet, if such be the true construction of the act, it could lead to no other result. In vain would he invoke the right of challenge to the individual

juror, be he father, brother, or even husband of his opponent. He will be told that he has suffered the time to elapse within which such objection should have been urged ; that the fatal *first* day of the term has passed, rendering thereby the jury collectively and individually, competent and legal. To this conclusion the court would be compelled, necessarily, to arrive, unless it confined the enactment *strictly* to the objections specified in the section, to the formalities required in the *formation, drawing* and *summoning* of a jury, which the court believes to be the true intent and meaning of the law. These specific objections are, to the *formation, drawing* and *summoning,* not to any supposed want of qualification on the part of any *particular member* of the jury ; and if any thing were wanting to strengthen this construction, it is abundantly furnished by the subsequent phraseology used in the section, to wit, " or any other defect whatever in the *construction* of said juries," adopting a term of art, evidently confined to the *erection* of the building, not to the *quality* of the materials. Besides, in many instances, particularly in the country, any other construction would operate as a denial of justice. Grand juries having little business before them, are frequenty discharged on the first or second day of the term, at which time answers are not always required to be filed, and few issues are joined. A prayer for a jury, under these circumstances, might continue the whole civil docket.

It however by no means follows from this train of reasoning, that the objection can be successfully urged *at all stages of the trial,* or in *every form of exception.* What might be good upon a motion for a new trial, might and would be inadmissible on a motion in arrest of judgment. On this *latter* motion, the party is confined to matters apparent on the record. He is not permitted to travel out of, nor beyond the record ; he cannot seek matter *aliunde,* to impeach the correctness of the proceedings.

A *demurrer,* on the part of the State, does not appear, to this court, to have been a proper answer to the motion, conveying, as it does, an admission that the jurors did not possess the qualifications necessary to make them good and lawful men. Still this circumstance cannot change the law, which refuses relief whenever the error complained of is not apparent on the record, upon which *alone,* the motion can be based. No *subsequent* occurrence can make that *good,* which was bad *ab initio.* The record contained, when the motion in arrest of judgment was made, no evidence whatever of any want of qualification in any member of the jury ; and, therefore, furnished *nothing* upon which the motion could operate.

Chitty, (Crim. Law,) observes ; " It is clear, that a defendant *before issued joined,* may plead the objection in avoidance ; but if he

take no such objection *before his trial,* it seems doubtful how far he can afterwards take advantage, except it can be verified *by the records of the court* in which the indictment is depending, as in case of an outlawry of one of the indictors in the same court; in which case, any one, as *amicus curiæ,* may inform the court of the objection;" exacting, as a *sine qua non,* that the objection should be patent upon the record, and relaxing this strictness, (and not confining the party to the record of the case,) only in cases where the objection can be sustained by the record of the same court, though in a different case.

Three other points have been made by the counsel for the accused, as being apparent on the record, which it becomes the duty of the court to examine. First, it is averred that the indictment is bad, because there " is no such place as the parish of Caddo, it being the body of the county."

The answer to this exception is found in the act of the Legislature, designating its limits, establishing its courts, and giving it a name, " the parish of Caddo." The law organizing the courts ordains, that a district court shall be holden in each and every parish. The district courts are obliged, by the statute, to hold sessions in each parish, into which the former division of the State is merged. The substitution, therefore, of the word " parish" for " county," was both proper and necessary. The point as urged in the argument before this court, assumes as fatal, the absence of the assignment of a particular place within the parish, at which the crime is charged to have been committed; as also the use of the word " at" instead of " in."

Upon an examination of the forms of indictment in the English books, we find such to be the *formula* usually adopted : *exempli gratia,* at the parish of Westham, in the county of Essex, &c. 1 Chitty, 146. The first to designate the venue; the second to show jurisdiction in the court. Starkie's Crim. Plead. 67, *et seq.* Both were requisite in England; and may, probably be so now, for reasons, however, which are inapplicable in this State. There the party accused was entitled to be tried by a jury of the vicinage or neighborhood. Here the prisoner has no such right, the jury being selected from the body of the parish for the trial of all cases cognizable by the court. The word " parish" was, therefore, properly substituted for " county," necessarily required to be used in England. The necessity which required its use in England, not existing in Louisiana, it is difficult to find any reason why it should be adopted here. *Cessante ratione, cessat et ipsa lex.* Besides, it comes within the very letter of the act, approved 4th March, 1805, which evidently intended, in adopting the common law of England, to strip it of all those redundancies and useless formalities of which even

the English judges themselves complained, although compelled to regard such things as substance and not form. By the thirty-second section of this act it is provided, " that all the crimes, offences, and misdemeanors hereinbefore named, shall be taken, intended, and construed according to and in conformity with the common law of England, divested, however, of unnecessary prolixity; the method of trial, the rules of evidence, and all other proceedings whatsoever in the prosecution of the crimes, changing what ought to be changed, shall be, except as is by this act otherwise provided for, according to said common law."

Now, what change would more palpably strike us as proper, than that of dispensing with a form (though still followed in England, if such be the case,) which would here, and under our system of jurisprudence, be nugatory and vain.

" *At* the parish of Caddo," the court believes to be equivalent to *in* the parish of Caddo. The two expressions would convey the same idea to every man in the community ; and, therefore, what every one would understand as meaning the same thing, cannot reasonably be supposed to be so vague and indeterminate as to have operated to the injury of the accused. Besides *non constat*, to this court, at least, that the crime charged was committed in the parish of Caddo. It may have been committed, for aught the court knows to the contrary, in the adjoining parish, on the boundary, or within one hundred yards of it, on which hypothesis the indictment would be clearly good. Vide Robinson's Crim. Law, p. 191, articles, 335, 336.

The second exception is ; " That the verdict is bad, no foreman having been appointed through whom the jury acted, as appears by the record, and the verdict not having been signed."

In criminal proceedings the court never appoints a foreman. It is true, that the jury speak through one of their members as their organ of communication with the court, which member, in legal parlance, has been called a foreman ; but he is no officer of the court, neither can he exercise authority, nor control the deliberations of his peers. He speaks for the whole jury, who would otherwise be compelled to answer *seriatim*, preventing thereby the unnecessary consumption of the time of the court. In England, the verdict is delivered *ore tenus*, recorded by the clerk as delivered, and read to the jury as recorded. They are asked if such be their verdict, and an affirmative answer closes their mission. The verdict is never signed. The practice in our State has not been uniform in this particular; some judges following the English forms, others requiring the verdict to be signed by the foreman. Either manner appears to this court to be legal.

The third and last exception complains of the judgment of the inferior court as illegal and oppressive, in condemning the convict to three years imprisonment in the penitentiary at hard labor, and to pay the costs of the prosecution, or to remain in prison one day longer.

Had the additional imprisonment of one day transcended the maximum of punishment defined by the law, the question would have presented itself under a different aspect. By the act of 19th March, 1818, under which this conviction took place, the punishment is limited to five years ; and it appears to this court, that the judgment is substantially a condemnation for three years and one day, according to the prisoner the privilege or faculty of release one day sooner, on payment of the costs.

The statutes referred to in argument, by which a prisoner may be discharged, either by a justice of the peace, or by act of insolvency, are inapplicable to this case, where the sentence is imprisonment and costs, and not fine and costs, as stated in the statutes.

*Judgment affirmed.*