## STATE *v.* JOHNSON AND MELVILLE.

The Supreme Court can not pass upon points not reserved by bills of exception, and which can not be assigned as error.

Wh re the prisoner had pleaded to an indictment for murder on a former trial—held, there was no necessity for a new arraignment.

Where an indictment for murder alleges in one count the death of the party killed to be by beating, and in another count by drowning, and each count lead to the same conclusion, the State will not be compelled to elect between the counts—the mode of killing not being material to the constitution of the offence.

Evidence of tacit admissions of a prisoner should be received with the greatest caution. This sort of evidence should not be received unless it consists of direct declarations of that kind, which naturally call for contradiction, and which, by his silence, the party acquiesces in.

APPEAL from the First District Court of New Orleans, *Robertson*, J. *Morse*, Attorney General, for the State. *Wapples & Wapples*, for defendant and appellant.

SPOFFORD, J. This case has already been before the Supreme Court, and was remanded for a new trial, on account of the erroneous rejection of a witness for the defence. See 9 An. p. —

Upon the second trial, the defendants were again convicted of manslaughter, and sentenced to hard labor for the term of eighteen years.

They have again appealed, relying upon numerous bills of exceptions, as well as upon certain points made in a motion for a new trial. The latter points are not presented in a proper form for this court to pass upon them. No bills of exceptions were taken with reference to them, and they have not been, and, as the record stands, could not be assigned as errors. Const. Art. 62; *State* v. *Faut*, 2 An. 837; *State* v. *Nelson*, 3 An. 497; *State* v. *Brown*, 4 An. 505; *State* v. *Romero*, 5 An. 25.

There was no necessity for a new arraignment of the prisoners, as they had previously pleaded to the indictment. By statute, an indictment for murder involves the charge of manslaughter, and they must be presumed to have been tried, the second time, for the latter offence, of which they were found guilty. They interposed no plea of *autrefois acquit*, or *autrefois convict*, when they were brought to the bar for trial.

1. The first bill of exceptions relied upon in the argument of the defendants' counsel, was taken to the refusal of the Judge to compel the Attorney General to elect between two of the counts of the indictment, one alleging the death of the party killed by beating, and the other by drowning.

All the counts charged the prisoners with the same crime, to wit: the murder of the deceased. The mode of killing is not material in the constitution of the offence, *moriendi mille figuræ* ; 3 Green Ev., Sec. 140. But the various modes were properly charged in different counts. No authority has been cited to show that the Government could be driven to an election between counts all tending to the same conclusion against the same parties, and we see no reason for establishing such a doctrine. It is true that a person indicted for one species of killing, as by poisoning, cannot be convicted by evidence of a species of death entirely different as by shooting, starving, or strangling; 2 Russell on Crimes, 712. But where various acts of violence are committed upon a man, as beating with a colt, and throwing him into a river, from either or all of which death ensued, it would be a singular rule of practice to narrow the judicial inquiry to a single act, where all the acts are clearly set forth in various counts, so as to put the accused fairly upon his defence.

The counts did not charge the acts to have been done in different places. In all, the venue was laid in the parish of Orleans, within the jurisdiction of the First District Court of New Orleans. This was sufficient, and there is no inconsistency in the counts in this particular. *State* v. *Nolan*, 8 Rob. 516 ; *State* v. *Moore*, Ib. 524.

2. The Coroner's inquest was properly admitted in evidence, for a restrictive purpose, under the authority of the case of the *State* v. *Parker*, 7 An. 84.

3. A bill of exceptions was taken to the evidence of one of the State witnesses who testified, that "he heard the keeper of the Stone Coffeehouse remark in the presence of *Wiliam Johnson,* one of the accused, that said *Johnson* had acknowledged to him, that he had accompanied the deceased from the Stone Coffeehouse on the morning of the alleged murder, some few squares up the street, and left him in the hands of a police officer, and that upon hearing this remark, the said *Johnson* did not deny it."

The only objection made to the evidence, was, that it contained a tacit admission, which was not known in the criminal law.

Undoubtedly such evidence should be received with the greatest circumspection. But the implied admission here was not an admission of guilt, but an admission of a distinct fact, to wit: that the accused had acknowledged to the keeper of the Coffeehouse, that he had been in company with the deceased on a certain morning, and left him with a police officer. The rule is, that this sort of evidence should not be received, unless it consists of direct declarations of that kind which naturally calls for contradiction, and which by his silence, the party acquiesces in. 1 Green Ev., Sec. 199. The rules of evidence with regard to voluntary admissions, are generally the same in civil and criminal cases. The term admission, in criminal cases, being applied to those matters of fact which do not involve a criminal intent. 1 Green Ev., Sec. 170. Lord Erskine said, that "a fact must be established by the same evidence, whether it is to be followed by a criminal or civil consequence;" but the intent is a very different thing, and cannot be established by a tacit admission. Here there appears to have been an extra judicial conversation between persons in presence of the prisoner, where the prisoner was stated to have acknowledged a certain fact, in

58

itself involving no guilt, to be true, and he acquiesced by his silence; he was naturally called upon to deny it, if he had not made the statement attributed to him, and it does not appear that anything rendered it impertinent for him to do so. Under these circumstances, it cannot be said that the evidence was wholly inadmissible. *State* v. *Rawles*, 2 Nott & McCord, 381; *Commonwealth* v. *Francis Call*, 21 Pick. 522.

4. The only remaining bill of exceptions was taken to a portion of the charge of the Judge, to wit: that wherein he referred to the case of Dr. Webster, in Massachusetts, as being a case depending wholly upon circumstantial evidence, followed by a verdict which was correct, to the cases in Phillips' Treatise on Evidence, where certain persons were convicted on circumstantial evidence, who afterwards turned out to be innocent, but who still at the same time, were legally convicted, to a remark that such cases were often cited to frighten juries into verdicts of acquittal, and to his proceeding further to argue and illustrate the case.

In all this, we think the Judge limited himself to giving the jury a knowledge of the law applicable to the case, as by statute it is made his duty to do. Sess. Acts 1853, p. 249.

The doctrine of circumstantial evidence is only illustrated by cases, and so long as the Judge abstained from alluding to the particular facts of the case before him, or giving the jury any opinion as to his impression of the facts, he was acting within the line of his duty to refer to the examples found in reported cases and the laws deducible therefrom.

It is therefore ordered and decreed that the judgment of the District Court be affirmed with costs.