(81 South. 747)

No. 23451.

STATE v. MARTIN.

(May 5, 1919.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW ⟐590(2)—HOMICIDE—CONTINUANCE—TIME FOR PREPARATION OF CASE.

Refusing a requested continuance in a homicide case *held* error, where accused's trial started six days after his indictment, one of the attorneys appointed to defend him was inexperienced, the other did not learn of his appointment until two days before trial, etc.

2. CRIMINAL LAW ⟐444 — EVIDENCE—PHOTOGRAPHS.

A photograph of a locomotive engine claimed to be a duplicate of the one in which a homicide was committed is admissible only after showing inability to obtain a photograph of the original engine, and proof that the photographed engine is an exact duplicate of the original, etc.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Fred Martin was convicted of murder, and appeals. Reversed and remanded.

Fred G. Benton and H. K. Strickland, both of Baton Rouge, for appellant.

A. V. Coco, Atty. Gen., and John Fred Odom, Dist. Atty., of Baton Rouge (Thomas W. Robertson, of New Orleans, of counsel), for the State.

DAWKINS, J. Defendant prosecutes this appeal from a conviction and sentence to hang under a charge of murder.

We find four bills of exception in the record retained to the ruling of the court below, as follows:

(1) Overruling a motion for continuance filed on the 6th day of March, 1919, in which it was alleged that accused had been indicted on the 28th day of February, 1919, and on the same day his case was set for trial for the said 6th day of March; that it was necessary for the court to appoint counsel to represent him, which was done at the time of his arraignment; that of the two counsel so appointed, only one of them had ever had any experience in the trial of criminal cases, and was absent from the city of Baton Rouge, and did not learn of his appointment until his return on the night of March 3d, and was therefore allowed only two days in which to prepare for trial; that neither of said counsel had had sufficient time in which to prepare for trial such a serious case; that they had not had an opportunity to seek out witnesses; that they had been unable to see personally the scene of the killing, the cab of a railway locomotive, which had been in New Orleans since the homicide; and that it was necessary and

material that counsel should be permitted to inspect said engine in order to properly prepare the defense.

(2) To the offering in evidence by the district attorney of the photograph of a type locomotive for the purpose of showing the place of the homicide and demonstrating the appearance and dimensions of those portions of the locomotive which were pertinent to the case, objected to by counsel for the defense on the ground that the engine in which the crime is alleged to have been committed was the best evidence; that the photograph does not purport to be one of the said engine, but of an alleged duplicate; that it is a photograph of one-half of the engine only; that there were no measurements thereon showing distances, etc.; and that the witness by whom the photograph was identified and verified admits that the engine has been materially changed since the photograph was made. Which objection was overruled, and the photograph admitted in evidence.

(3) To the overruling by the lower court of similar objection to that made in bill of exceptions No. 2 to questions propounded by the district attorney to a witness named Bernie Nicholls in connection with this same photograph.

(4) To the overruling of the motion for a new trial.

### Opinion.

As exceptions Nos. 1 and 4 deal with the same subject-matter, we shall consider them together.

[1] In its per curiam to the bill of exceptions retained to the overruling of the motion for a continuance the lower court says:

"This bill shows that one of the counsel had six days and the other two full days for preparation of the defense. It does not present any unusual or exceptional difficulties to a prompt and proper defense. It shows an absence of due diligence. It does not allege any fact which could be established by witnesses, or the exist-

ence of witnesses or any court process whatever."

These remarks, of course, were made in the light of the subsequent trial and the nature of the case developed thereon; for it cannot be assumed that the court knew what the nature of the case or the character of the defense would be. So that, in determining the correctness of the ruling, what is said with reference to the length of time allowed and the diligence of counsel alone were pertinent.

It must be borne in mind that this is a capital charge, under which the accused might suffer the severest penalty known to the law, and that such penalty has actually been imposed. It was set up in the motion that the first counsel appointed was inexperienced, and, in brief, we are informed that this was his first case, either civil or criminal (except the participation in a small way in one other civil case), and, while admitted to practice, he is still a student at the State University, where he is seeking a diploma in law. This is not denied. It further appears that the other counsel, who is an experienced practitioner, was out of the city of Baton Rouge, where the case was to be tried, at the time of his appointment, and was not informed thereof until his return on the night of the 3d of March, when the case was to be tried on the 6th. The offense was charged to have been committed on the 25th of February. The indictment was returned by the grand jury called in special session on February 28th, and on the same day the accused was arraigned and his case set for March 6th. Between the dates of his arrest and arraignment, we are informed, he was sent to the city of New Orleans for safe-keeping.

It further appears from the motion that the scene of the homicide was the cab of a railway locomotive, which counsel for accused made reasonably diligent effort to see

and inspect before the trial, but which they were unable to do because the same had been removed to the city of New Orleans. The importance of this locomotive or cab and measurements to the case was illustrated by the fact that the state had made a photograph of what was said to be a duplicate or twin engine, and offered the same in evidence. It is also stated, and not denied, that there was only one eyewitness to the killing, and that he did not see the beginning of the difficulty. It therefore became very important, in our opinion, that the counsel for accused should have been afforded a reasonable time and opportunity for making this inspection, and in which to ascertain and prove the conditions, measurements, and evidences, if any, that might tend to corroborate the testimony of the accused that he acted in self-defense, or to reduce the offense from murder to manslaughter. The court could not determine in advance of an inspection that such proof could not be produced, and counsel were not given the opportunity to make the inspection.

It was not necessary that the accused should have alleged, under those circumstances, the particular facts on that score which he expected to prove; for, in the nature of things, it was impossible. State v. Simpson, 38 La. Ann. 23.

While the zeal of counsel for the state and the promptness of the court in endeavoring to see that such serious violations of the law as the one here charged are promptly punished are to be commended, at the same time reasonable safeguards guaranteed to the accused to insure him a fair and impartial trial, and in order that the punishment may not be any greater than that which the case warrants, should not be overlooked. Until a reasonable opportunity had been afforded for him to obtain and produce for the guidance of the court such evidence as existed, we do not think those guaranties could be fulfilled. State v. Collins, 104 La. 629, 29 South. 180, 81 Am. St. Rep. 150.

It is also set up in the motion for new trial that, because of the short time in which his counsel had to prepare for trial, they were unable to communicate with his friends and acquaintances at his home in the city of New Orleans, in order that he might produce evidence of his good "character for peace and quiet." If it be true that there was only one eyewitness, who did not see the beginning of the difficulty, and the reasons and causes therefor were not fully explained, such testimony might become very important as a corroborating circumstance of the accused's testimony to support his plea of self-defense or justifying the jury in waiving the death penalty, or in reducing the offense to manslaughter.

Taking all of the circumstances of the case into consideration, we think the court below erred in not allowing more time for the preparation of the defense.

[2] While it is unnecessary, in our opinion, to pass upon bills of exception Nos. 2 and 3, involving the right to offer in evidence the photograph complained of, as well as the evidence of witnesses in regard thereto, at the same time, inasmuch as this case will be tried again, and the same question will doubtless arise, we think proper to say that, before such a photograph as that described in the record can be introduced, the proper foundation should be laid; that is, inability to obtain by reasonable effort a photograph of the engine in which the difficulty occurred; that the engine represented in the photograph is an exact duplicate as to dimensions, etc.; that no material changes have been made which may affect its value as evidence; and that it otherwise faithfully represents the true situation. When this is done, we think the objections urged would go to the effect, and not to the admissibility, of the evidence.

For the reasons assigned, the conviction and sentence are annulled and set aside, and this case is hereby remanded to be proceeded with according to law.

O'NIELL, J., takes no part, not having heard the argument.