(101 South. 136)

No. 26382.

## STATE v. WHITE.

(March 8, 1924. On the Merits, June 20, 1924. Rehearing Denied July 8, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law** ⟜636(1) — **Minutes must show accused's presence at every important stage of proceeding.**

Minutes of court must show accused's presence at every important stage of proceeding in trial for felony.

2. **Criminal law** ⟜1110(9)—**Case remanded for opportunity to correct minutes, where same do not show defendant's presence at trial.**

Where copy of court's minutes in record on appeal does not show defendant's presence at trial, but it is not improbable that he was in fact present, case will be remanded to give opportunity to have minutes corrected.

On the Merits.

3. **Criminal law** ⟜1091(10)—**Objection to correction of minutes should be subject of bill of exceptions.**

Objection to correction of minutes after remand for that purpose should be made subject of a bill of exceptions signed by trial judge, showing objections and rulings of court, with other necessary or proper matter.

4. **Criminal law** ⟜1133—**Motion for rehearing lies only after definitive judgment, not after order temporarily remanding case.**

Under rule 14, § 5, a motion for rehearing lies only after a definitive judgment is rendered, and is improper after order temporarily remanding case for correction of minutes.

5. **Criminal law** ⟜1110(9)—**Decree temporarily remanding case is interlocutory, and immediately effective.**

Decree temporarily remanding case for correction of minutes is interlocutory, and effective the moment rendered, though subject to change by court at any time before rendition of final judgment.

6. **Criminal law** ⟜1110(9)—**Trial court held not without authority to correct minutes.**

Since a motion for rehearing will not lie after a decree temporarily remanding a case for correction of minutes of trial court, trial court, after such remand, is not required to

wait until after lapse·of time within which a motion for rehearing might have been made before proceeding to make corrections sought.

**7. Criminal law ☞1110(2)—Trial court held empowered to correct minutes, independent of decree remanding case for correction.**

.The trial court, after appeal in a criminal case, has right to correct its minutes, so as to affirmatively show defendant's presence at all important stages of trial, independently of order of appellate court remanding case for such correction.

**8. Criminal law ☞1110(9) — Proceeding to correct minutes of trial court held not collateral attack thereon.**

Where copy of minutes of trial court on appeal did not show defendant's presence at all important stages of trial, and case was remanded for correction, of such minutes', subsequent motion by state for such correction held not unauthorized collateral attack on minutes of court.

**9. Criminal law ☞1110(5)—Correction of minutes of criminal prosecution in subsequent civil term held proper. \**

Trial court held to have power to correct its minutes, taken in criminal prosecution, at subsequent civil term.

**10. Jury ☞59(2)—Title of jury commissioner to office may not be collaterally attacked.**

Title of a jury commissioner, in actual possession of office under color of right, cannot be inquired into collaterally, for purpose of annulling his official acts or acts of commission of which he is a member.

**11. Indictment and information ☞139—Motion to quash indictment must be filed before arraignment.**

A motion to quash an indictment must be filed before arraignment.

**12. Jury ☞59(½)—Suit to remove jury commissioner from office must be instituted by state.**

A jury commissioner is an officer, and suit to remove from office must be instituted in name of state, by proper official, rather than individual.

**13. Criminal law ☞264—Motion to postpone arraignment held properly denied.**

On motion to postpone arraignment, because of pendency of suit instituted by defendant, questioning a jury commissioner's right to office, being prosecuted for the purpose of furnishing a foundation for a motion to quash

indictment, fact that suit was instituted by defendant, rather than proper officer of state, was such fundamental error as could be noticed by court, and warranted denial of postponement.

**14. Jury ☞59(2) — Jury commissioner held at least commissioner de facto.**

Jury commissioner, appointed ·under Act No. 135 of 1898, § 3, and in actual possession of office under color of right, held at least jury commissioner de facto, though he may not have been qualified elector at time of appointment.

**15. Grand jury ☞8—Validity of selection of grand jurors unaffected by fact that jury commissioner may have been only de facto officer.**

Acts of a de facto jury commissioner, including participation in the selection of grand jurors, are valid, and are not rendered invalid, though he be subsequently declared ineligible in suit brought for that purpose.

**16. Criminal law ☞586, 1151—Grant of continuance within court's discretion; action not disturbed, except for abuse of discretion.**

The grant of a continuance is largely within the discretion of the trial court, whose action will not be interfered with, except for abuse of discretion.

**17. Criminal law ☞593—Denial of continuance because of pendency of other cases held not abuse of discretion.**

Denial of continuance because of pendency of other cases in which defendant's counsel was engaged during week of defendant's trial held not abuse of discretion.

**18. Criminal law ☞486—Homicide ☞262— Questions eliciting evidence relative to size of wounds, as compared with piece of iron not then introduced in evidence, held proper.**

In prosecution for murder, questions asked the coroner, eliciting evidence that wounds found on deceased's body were exactly the width of piece of iron displayed to him and' found near the scene of the crime, held not improper, even though instrument was not introduced in evidence.

**19. Criminal law ☞519(7)—Proof of statement by defendant held not error, as involuntary confession.**

Proof that defendant, while riding in automobile, shackled and handcuffed, and accompanied by two armed deputy sheriffs, made an incriminatory statement in response to questions, was not inadmissible as an involuntary

confession, when there were no threats or inducements.

**20. Criminal law ⬤⟹1159(2)—Supreme Court without authority to review sufficiency of evidence.**

Supreme Court is without authority to review sufficiency of evidence on which conviction rests.

**21. Criminal law ⬤⟹968(8)—Questions of fact requiring consideration of evidence not reviewable on motion in arrest of judgment.**

Questions of fact requiring consideration of evidence are not reviewable on motion in arrest of judgment; the only defect that can be so raised being one patent on the face of the record.

**22. Criminal law ⬤⟹968(6)—Pendency of another indictment charging same offense not ground for motion in arrest.**

Pendency of another indictment against defendant, charging same offense as one under which he was prosecuted, *held* not ground for motion in arrest of judgment.

**23. Indictment and information ⬤⟹15(2) — Pendency of two indictments charging same offense no bar to proceeding under either.**

The fact that there are two indictments pending against accused at the same time for the same offense is no bar to a proceeding under either.

**24. Criminal law ⬤⟹874 — Clerical error in verdict held cured by poll of jury.**

Error in verdict reading, "We the juror find the defendant guilty as charged. J. O. R., foreman," *held* corrected by poll of jury.

O'Niell, C. J., dissenting in part.

Appeal from Eleventh Judicial District Court, Parish of Red River; James W. Jones, Jr., Judge.

Amos White was convicted of murder, and sentenced to death, and he appeals. Affirmed.

See, also, 153 La. 300, 95 South. 776.

Hy. W. Bethard, Jr., and S. M. Cagle, both of Coushatta, for appellant.

A. V. Coco, Atty. Gen., and S. R. Thomas, Dist. Atty., of Coushatta (T. S. Walmsley, of New Orleans, of counsel), for the State.

By the WHOLE COURT.

OVERTON, J. Defendant, having been convicted of murder and sentenced to death, has appealed.

The copy of the minutes of court, found in the record, of date October 22, 1923, shows that defendant's case was called for trial on that day, that counsel for the state and for the defendant announced ready for trial, and that the trial was proceeded with by impaneling the jury, etc.; but the record fails to show that the accused was present at the trial on the day stated. The copy of the minutes of October 23, 1923, shows that the jury came into open court on that day, which was the day after the case had been submitted to them, and rendered their verdict, and that, after the jury had been polled and the verdict had been ordered filed and recorded, the defendant was remanded to jail to await sentence.

[1, 2] The minutes must show the presence of the accused at every important stage of the proceeding, in a trial for felony. State v. Thomas, 128 La. 813, 55 South. 415; Marr's Criminal Jurisprudence (2d. Ed.) § 275, p. 407. While this is so, yet where it is not improbable that the accused was, in fact, present at his trial, an opportunity will be given to show, contradictorily with him, that he was present, and, if found to have been so, to have the minutes corrected accordingly. State v. Revells, 31 La. Ann. 387. Therefore, as the copy of the minutes in the record, of date October 22, 1923, on which day defendant was put on his trial, fails to show that he was present, the case will be remanded, under the circumstances, to give the state an opportunity to show whether the defendant was present or not, and, if found to have been present, to have the minutes corrected accordingly.

With respect to the minutes of October 23, 1923, they are probably sufficient to show that the defendant was present when the verdict was rendered, since it appears that

after it was returned, and the jury polled, and the verdict ordered filed and recorded the accused was remanded to jail. State v. White, 33 La. Ann. 1221; State v. Askins, 33 La. Ann. 1253. Without questioning the correctness of the ruling in these cases, yet in view of the fact that this court said, with respect to a similar minute entry in the first case cited, that the clerk might have been more explicit in making the entry, and in view of the fact that this case must be remanded to supplement the minutes of the preceding day, we feel that the minutes of the 23d should be made more specific, by showing with greater clearness whether the defendant was present when the verdict was rendered.

For the reasons assigned, without disturbing the verdict or the sentence imposed, it is ordered that this case be remanded temporarily for the purpose of enabling the state to show contradictorily with the defendant whether or not he was present at his trial on October 22, 1923, and, if he was, to have the minutes corrected accordingly, and likewise to have the minutes show with greater clearness whether the defendant was present on the following day, when the verdict was rendered, and that a certified copy of said minutes, when corrected, be returned to this court, with a copy of the proceedings had, to the end that this appeal may be determined.

### On the Merits.
### By the WHOLE COURT.

OVERTON, J. This case was remanded temporarily, for the purpose of having the minutes of court show whether or not the accused was present during his trial, and to show more clearly than they did whether he was present when the verdict was rendered. After the decree of the court was handed down, remanding the case temporarily for the foregoing purposes, the state of Louisiana, through the district attorney, filed a motion contradictorily with the defendant to have the minutes of court corrected, so as to make them conform to the facts, by showing that defendant was present throughout his trial and when the jury returned their verdict in the case.

Defendant interposed several objections to the trial of the foregoing motion. These objections may be summarized as follows: (1) That the mandate of this court, remanding this case temporarily, had not reached the trial court, and that the trial court could not act until the mandate reached it; (2) that the motion to correct the minutes was filed and was made returnable before the expiration of the legal delay for applying for a rehearing, for the purpose of testing the correctness of the decree of this court, remanding the case, and that to hear the motion before the expiration of such delay would result in depriving defendant of his right to a rehearing with respect to said decree; (3) that the motion filed by the state is a collateral attack upon the minutes of the trial court; (4) that the state was attempting to correct the minutes at a civil instead of a criminal term, when the rules of court divided the terms into criminal and civil.

The foregoing objections were overruled by the judge a quo. Defendant excepted to the ruling made, but presented no bill of exceptions to the trial judge for signature.

[3-9] In our view, if defendant desired to insist upon his objections on appeal, he should have had the trial judge sign a bill of exceptions, showing the objections urged by him, and the rulings of the court thereon, with such other matter as it was necessary or proper to show. This, as we have seen, defendant did not do. However, aside from his failure in this respect, we are of the opinion that, had such a bill been signed, it would have had no merit. We are of the opinion that it would have possessed no merit, because defendant had no right to

apply for a rehearing, as contended for by him, with respect to the decree remanding this case. That decree is not a definitive judgment, and it is only when a definitive judgment is rendered that a motion for a rehearing lies. Rule XIV, § 5, 136 La. xii; State v. Fowler, 42 La. Ann. 147, 7 South. 180; Gagneaux v. Desonier, 109 La. 459, 33 South. 561; Succession of Edwards, 34 La. Ann. 216. As the decree is an interlocutory one, it became effective the moment it was rendered, although it remained subject to change at any time, by this court, before the rendition of final judgment. State ex rel. Leche v. Fowler, 42 La. Ann. 144, 7 South. 180. Hence there was no reason why the court below should not have proceeded with the trial of the motion, in so far as the delays for a rehearing are concerned, for there were no such delays. We are also of the opinion that, had such a bill been signed, it would have possessed no merit, for the reason that the court below was not dependent upon a decree of this court to correct the minutes, although an appeal was pending, but had the right to proceed without such a decree, to correct them. State v. Perry, 51 La. Ann. 1074, 25 South. 944; State v Howard, 34 La. Ann. 369; State v. Tessier, 32 La. Ann. 1227; State v. Revells, 31 La. Ann. 387. Hence, defendant's position that the court a qua had to await the arrival of the mandate of this court is not tenable. We are also of the opinion that, had such a bill been signed, it would have possessed no merit, in so far as concerns the additional objection that the proceeding to correct the minutes amounted to a collateral attack upon them. The proceeding was not a collateral attack upon the minutes, but was one to correct them, conducted contradictorily with defendant. Nor do we think that, had a bill been signed incorporating the last objection urged—that is, that the minutes were corrected at a civil, instead of a criminal, term

of court—the bill would have been tenable, for it was immaterial whether the term of court at which the correction was made was a civil or a criminal term, notwithstanding the fact that the rules of court divided the terms into civil and criminal.

Upon the trial of the motion to correct the minutes, the state offered evidence to show that defendant was present throughout his trial, including the time when the jury returned into court and rendered their verdict. This evidence is uncontradicted. It shows abundantly that defendant was present, as contended by the state. The judge a quo accordingly had the minutes corrected, so as to show affirmatively that defendant was present throughout his trial, including the rendition of the verdict. The defendant has no cause to complain. We therefore pass to what in reality is the first bill of exceptions.

### Bill of Exceptions No. 1.

It appears that defendant was indicted for the murder of Gladys White. He was tried, convicted, and sentenced to death. On appeal to this court, the verdict rendered and the sentence imposed were annulled, and defendant was granted a new trial. State v. White, 153 La. 300, 95 South. 776. After the case was remanded, another bill of indictment was returned against defendant, charging him with the identical offense preferred against him in the first bill. He was again arraigned, tried, found guilty, and sentenced to death. From this second sentence he prosecutes this appeal. The first bill, properly speaking, reserved by him, is one to the arraignment on the second bill of indictment.

[10, 11] This court held in the cases of State v. Smith, 153 La. 577, 96 South. 127, State v. Mitchell, 153 La. 585, 96 South. 130, State v. Moreau, 153 La. 671, 96 South. 527, and State v. White, 153 La. 300, 95 South. 776, that the title of a jury commissioner who is in the actual possession of his office

under color of right, and is therefore a jury commissioner de facto, cannot be inquired into collaterally for the purpose of annulling his official acts, or the acts of the commission of which he is a member. Defendant reached the conclusion that J. W. Woodard, a member of the jury commission that selected the venire from which was drawn the grand jury that returned the bill of indictment against him in this case, did not possess all of the qualifications required for a jury commissioner, in that at the time he was appointed to his office, and at the time he participated in the selection of the venire, he was not an elector, duly and properly registered, and hence, that the acts of the commission in which he participated are null and void, which acts include the selection of the venire from which was drawn the grand jury that returned the bill of indictment herein, and that said grand jury was therefore an illegal one, and that the indictment returned by it is therefore null and void. Having reached that conclusion, and feeling bound by the decisions above cited, defendant instituted a suit, after the return of the indictment herein, to remove Woodard from office, on the ground that he (Woodard) was not an elector, duly and properly registered, and was unable to properly register, and for the purpose of having his acts as jury commissioner, and those of the commission of which he was a member, declared null and void. When defendant was called for arraignment, he filed a motion to postpone the arraignment until the suit against Woodard should be finally determined, and made the petition in that suit a part of this motion. His object, in then objecting to arraignment, was to obtain time in which to press the suit for removal to a final determination, and, in the event of success in that suit, then to file a motion to quash the indictment returned against him, on the ground that Woodard had been ousted from office, and

his acts, and those of the commission of which he was a member, had been declared null and void in a direct action. Such a motion—that is, a motion to quash an indictment—must be filed before arraignment, and hence it was that defendant desired time within which to lay a foundation for quashing the indictment, and objected to arraignment until such time should be granted him, for he wished to preserve his rights, if any he had, to quash the indictment. The trial court thought that the motion to postpone the arraignment was not well founded, and therefore overruled it, and defendant reserved this bill to the ruling made.

[12-15] In our view, the trial judge was correct in overruling the motion to postpone the arraignment. To begin with, the suit to remove Woodard from office was instituted by defendant personally. As a jury commissioner is an officer, a suit to remove one must be instituted in the name of the state by the proper official. See Haynes v. Thompson, 21 La. Ann. 655. As the suit was instituted by defendant personally, the error was so fundamental that the suit amounted, virtually, to no suit at all, and the trial court had the right to notice the error, and to refuse to postpone the arraignment, as the suit could not have reasonably resulted in the removal of Woodard. Let us assume, however, that the suit was properly instituted, and see what the result would have been, had the postponement been granted. The petition to remove Woodard, and to declare his acts, and the acts of the commission, of which he was and is a member, null on account of his participation therein, admits that Woodard was appointed by an order of the district court in and for the parish of Red River, that the order of appointment was spread upon the minutes of the court, that Woodard took the oath required of jury commissioners, and that he is in the actual possession of the office of jury

commissioner and was so at the time the venire complained of was selected, but alleges that the appointment and oath are invalid for the reason above stated; that is, as to the qualification of Woodard as a duly registered elector. Section 3 of Act 135 of 1898 confers power on district judges, outside of the parish of Orleans, by written order, to appoint jury commissioners. Therefore, as Woodard was in the actual possession of his office under color of right when the acts complained of were performed, he was. at least at that time, a jury commissioner de facto. State v. Smith, 153 La. 577, 96 South. 127. As Woodard was then a jury commissioner, at least de facto, the fact that he may not have been one also de jure, when the commission of which he was a member selected the venire, does not render invalid the selection, or affect the validity of any of the acts of the commission of which he was a member, but, to the contrary, those acts are as valid, as to the public and third persons, as if he, together with the remaining members of the commission, were jury commissioners both de facto and de jure, when those acts were performed. State v. Smith, State v. Mitchell, and State v. Moreau, cited supra. As these acts were valid when performed, they would have remained valid, although Woodard should have been declared. to have been ineligible to the office of jury commissioner, in the suit against him, when those acts were performed. Those acts could not have been decreed invalid in that suit on the ground urged, or in any other suit upon that ground, for they were valid when performed, and remain so. For that reason, also, the trial court ruled properly in refusing to postpone the arraignment, for it would have been vain and useless to have done so.

### Bill No. 2.

On October 16, 1923, the district attorney moved that defendant's case be fixed for trial for October 22d following. Defendant objected to the fixing, but the trial judge overruled the objection. Later defendant filed a motion for a continuance, which the court also overruled. The motion for a continuance, as incorporated in the bill of exceptions reserved to the ruling of the court, recites that Mr. Bethard, the leading counsel for defendant. was serving in this case under appointment of court, and that, besides defendant's case, Mr. Bethard was either appointed by the court or employed in the following cases, fixed to be tried on the following dates, to wit:

"State of Louisiana v Ben Bradley, murder, in which case the said Hy. W Bethard, Jr., was the only counsel, and was serving under appointment of court; said case having already been set for trial on the 23d day of October, 1923.

"State of Louisiana v. Mabel and Noah McGee, murder, which case has been set for trial on October 26, 1923, and in which the said Hy. W. Bethard, Jr., was serving, with other counsel, by appointment of the court.

"State of Louisiana v. Hearsey Moore, murder, in which case said Hy. W. Bethard, Jr., was employed as counsel, and the same was set for trial on the ―― day of ――, 1923, within the week beginning October 22, 1923. (This case had not been set for trial at the time of the filing of defendant's application for a continuance, but was later set for Thursday, October 25, 1923.)

"State of Louisiana v. Pollie Ashley et al., cutting with intent to murder, in which case the said Hy. W. Bethard, Jr., was employed as counsel, was set for trial on the 24th day of October, 1923."

The motion then alleges that, in view of the fact that all of said cases, in which defendant's leading counsel was serving, were fixed for the same week, it would be gross injustice to force defendant to trial, under the circumstances.

The district judge, in assigning his reason for refusing the continuance, says that he refused it because:

"The defendant had been tried and convicted some 12 months ago for the commission of the crime alleged, and had then been represented by the same counsel as are now representing him, of which Mr. Bethard was leading counsel. It

appeared to the court that counsel had ample time—a year or more—in which to prepare for the defense; was thoroughly, or should have been thoroughly, familiar with the facts in the case, having gone through the trial once before.

"Furthermore, in the case of State v. Mabel and Noah McGee, referred to in the motion and bill, the entire bar, except the district attorney, was appointed to represent the defendants, and Hon. J. F. Stephens was leading counsel therein. This case, State v. McGee, had also been tried on two previous occasions, resulting both times in a mistrial. Therefore all counsel, although some of them were taking subordinate parts, should have been familiar therewith.

"In the case of State v Hearsey Moore, the firm of Nettles & Bethard. of which Mr Bethard is junior member, was employed, according to the evidence adduced on the trial of the application for a continuance, to represent the defendant. However, this case had not been set for trial at the time the present motion was filed, and when it was fixed for trial no motion for a continuance on the ground that counsel had not time to prepare was filed.

"In the case of State v. Pollie Ashley et al., Messrs. Thomas W. Nettles and S. M. Cagle were appointed by the court to represent the defendant. However, because of the physical condition of one of the defendants, the district attorney had agreed to a postponement of the trial, and defendant's counsel was aware of the fact that such case would not be called for trial."

It will be observed from the foregoing that the case against defendant was the first of the several cases in which his counsel, Mr. Bethard, was appointed or employed, fixed to be tried during the week beginning October 22, 1923, the week for which the remaining cases in which Mr. Bethard was appointed or employed were fixed for trial. It appears from the minutes of court that the trial of the case against defendant was proceeded with on the day fixed, and hence it appears that defendant's case was not only fixed to be tried before the other cases mentioned, but was actually tried before those cases were. Hence we think it may be said that Mr. Bethard entered the trial of the case against defendant comparatively fresh, and not broken down by the trial of other cases.

Moreover, it will be observed that the case against defendant was tried once before, in which trial defendant was represented by Mr. Bethard. Therefore it may be said that the latter was familiar with the case when it was fixed for trial the second time.

[16, 17] The law is that the granting of a continuance rests largely within the discretion of the trial judge, and that his refusal to grant one should not be interfered with, except when it appears that he has abused the discretion vested in him. State v. Jack et al., 139 La. 885, 72 South. 429; State v. Wilson, 33 La. Ann. 261. In this case we are not prepared to say that the trial judge abused the discretion vested in him by law. In fact, in view of the foregoing observations and the statement of the trial judge, we see no reason why defendant should not have been ordered to trial. The ruling in the case of State v. Collins, 104 La. 629, 29 South. 180, 81 Am. St. Rep. 150, cited by defendant, is not applicable here. The motion for a continuance in that case was based on facts materially different in their essential features from those presented here.

### Bills No. 3 and No. 4.

[18] While Dr. W. L. Davis, the coroner of the parish, was on the witness stand, the district attorney propounded to him the following question, to wit:

"Q. I will ask you, Doctor, now, if the wounds found on the deceased were about as wide or a little wider than this iron bar I hold in my hands?"

Later the district attorney asked the witness another question, which was as follows, to wit:

"Q. When you placed this piece of iron on the wound, what did you see?"

Each of the foregoing questions was objected to by defendant, substantially upon the ground that the witness was incompetent to testify directly as to what caused the wound on the body of the deceased, and

therefore that it was improper to have him convey indirectly to the jury that the wounds were caused by the instrument exhibited by the district attorney, and also upon the ground that the piece of iron had never been introduced in evidence, or offered as such.

The trial judge states that it was proven that the iron bar in question was found by a deputy sheriff a few hours after the commission of the homicide, hanging through a crack in the floor in the house in which defendant and the deceased lived, and where the body of the deceased was found.

The witness did not answer the first question propounded, but answered the second by saying that the wounds on the deceased were exactly the width of the iron bar shown him by the district attorney, not only in one but in numbers of places, and in fact that the bar exactly fitted all of the wounds that were measured.

The district attorney was not seeking by the foregoing questions to elicit the opinion of the witness as to whether or not the homicide was committed with the iron bar which he had exhibited to the witness, though, as stated by Wharton, in his work on Evidence, the witness being an expert one, might have been asked whether the wounds found on the body of the deceased could have been produced by such an instrument. Wharton's Criminal Evidence (8th Ed.) § 774. The district attorney, however, was not even seeking to elicit the opinion of the witness in the latter respect, but was merely endeavoring to show facts which, in connection with the remaining evidence introduced, might enable the jury to say whether or not the wounds were inflicted with that instrument. The district attorney had the right to introduce evidence to enable the jury to ascertain whether the wounds were thus inflicted, for he had the right to show the means by which the homicide was committed, and therefore had

the right to ask the questions propounded and objected to, and to bring out the evidence actually brought out by one of those questions, to show those means. In asking the question propounded, he had the right to exhibit to the witness in the presence of the jury the instrument which he was endeavoring to show was used to kill the deceased, and to frame his questions accordingly, notwithstanding the fact that the instrument, when the questions were propounded, had not been offered in evidence. The ruling of the trial court was therefore correct.

### Bill No. 5.

[19] This bill was taken to an incriminating statement, amounting virtually to a confession, made by defendant to C. R. Mathews, a deputy sheriff. It appears that Mathews and Lloyd Elliot, another deputy, were sent to Minden to get the defendant and bring him to Coushatta. At Minden, the deputies shackled defendant and conveyed him by automobile to Coushatta. Both deputies were armed. Elliot drove the automobile from Minden to Coushatta, and Mathews sat on the rear seat with defendant. Mathews conversed some with defendant on the way to Coushatta, though not very much. He questioned defendant concerning the various movements he had made, or was supposed to have made, while the officers were searching for him, and about his having changed clothes with another negro, and finally asked him why he had killed that woman, referring to the deceased. Mathews was then asked by the district attorney what the answer of defendant to the last question that he (Mathews) had propounded to him was. Defendant objected to Mathews answering the question, substantially on the ground that the confession was not made voluntarily and without fear of bodily harm, but that it was made while he was shackled and handcuffed, and in answer to questions propounded to

him by an armed deputy sheriff. The judge a quo overruled the objection, for the reason that he found that the statement or confession had been made voluntarily, and that no inducements had been offered to obtain it. After the objection was overruled, Mathews answered the question by saying that defendant replied as follows:

"I never killed her. I just whipped her, and she died."

No threats were made against defendant, nor was any violence used against him, nor was there any inducement of any kind offered him, to obtain the statement or confession; but the statement was made voluntarily. True, it was made while defendant was under arrest and while he was shackled; but the fact that it was so made does not of itself make it involuntary, or otherwise render it inadmissible as evidence. State v. McGuire, 146 La. 49, 83 South. 374. It is also true that the statement was made in response to a question propounded to defendant, and after he had been questioned to some extent concerning his supposed connection with the homicide; but the fact that he was so questioned, and made the statement in response to one of the questions propounded to him, does not affect the admissibility of the statement as evidence against him. State v. Berry, 50 La. Ann. 1309, 24 South. 329; State v. Hogan, 117 La. 863, 42 South. 352. The fact that the deputy, to whom defendant made the statement, was armed at the time it was made, as was also the deputy who was driving the automobile, does not render it inadmissible, in view of the affirmative proof adduced that no threats were made against defendant, and that the officers in charge of him did not intimidate him in any manner. Counsel for defendant, however, argue that all of the foregoing facts, considered together and in connection with the additional fact that the incriminatory statement was made in a rapidly moving automobile, show surroundings and conditions sufficient to bring about such a state of fear in their client as to vitiate as evidence an incriminatory statement or confession made by him. In our opinion, the surroundings and conditions referred to were not sufficient to bring about such a state of fear. In fact, the uncontradicted evidence shows that at the time defendant made the statement he did not seem to be frightened in the least. We therefore conclude that the court below correctly overruled the objections urged to the incriminatory statement.

### Bill No. 6.

[20] This bill was reserved to the overruling by the trial court of a motion for a new trial, based on the ground that the conviction of defendant was contrary to the law and the evidence. The motion was overruled by the judge below, for the reason that he was of the opinion that defendant had had a fair and impartial trial, and for the further reason that he was of the opinion that the evidence showed convincingly that defendant had murdered the deceased, who was his wife.

We have reviewed the bills of exceptions urged as affecting the legality of the trial, and have found that they are not well grounded. The statement of the trial judge that the evidence established the guilt of the accused disposes of the rest of this bill, for the reason that this court is without authority to review the sufficiency of the evidence upon which a conviction rests. This is too well established to require the citation of authority.

### Bill No. 7.

This bill is taken to the overruling by the trial court of a motion in arrest of judgment. The motion overruled is based on the following grounds: (1) That, at the time the bill of indictment was returned in this case, there was pending against defendant an in-

dictment in case No. 8273 of the docket of the trial court, upon which indictment defendant had been arraigned and had pleaded not guilty, and which charges him with the identical offense that is preferred against him in the present case; that, notwithstanding the pendency of the indictment in case No. 8273, and notwithstanding the plea of not guilty entered thereunder, defendant was arraigned and tried under the last indictment returned, and that the situation thus brought about created "a condition of lis pendens," the effect of which is to make the verdict rendered in this case illegal; (2) that the verdict should be annulled, because it was rendered by only one member of the jury for it reads:

"We the juror find the defendant guilty as charged.        J. O. Rawls, Foreman."

[21] As to whether or not there was another indictment pending against defendant at the time the indictment in the case at bar was returned, charging him with the identical offense here charged, is a matter which requires the taking of evidence. It is not one of those matters that is patent upon the face of the record herein, for reference must be had to another case and to the minutes of court in such other case to ascertain that fact. In State v. Capell, 154 La. 662, 98 South. 59, we said:

"Questions of fact requiring evidence are not reviewable on a motion in arrest of judgment."

And in Marr's Criminal Jurisprudence (2d Ed.) p. 1145, it is said that:

"The province of the motion in arrest of judgment is to assign some error patent on the face of the record, or some radical defect therein, the rule being that a defect that can be established only by the taking of evidence must be urged in a motion for a new trial, and not in arrest; that is to say, the motion must depend on and be tried by the record itself."

[22] Hence it is clear that, as the indictment and proceedings in the first case constitute no part of the record in the present case, the ground relied on cannot be successfully urged by motion in arrest of judgment. True, defendant has attached to his bill of exceptions a copy of the indictment in the first case, and the trial judge has virtually certified that there were two indictments pending against defendant for the same offense at the same time; but those facts do not make the foregoing rule inapplicable. See State v. Nolan, 8 Rob. 513; State v. White, 52 La. Ann. 206, 26 South. 849.

[23] However, let us cast aside this reason for not sustaining the motion in arrest on the ground now under consideration, and see what the result will be. The result is readily ascertainable. A reference to the authorities makes it clear that the fact that there are two indictments pending against an accused at the same time for the same offense, is no bar to proceeding under either. State v. Stewart, 47 La. Ann. 410, 16 South. 945; State v. Kelly, 134 La. 537, 64 South. 403; Rosenberger v. Com., 118 Pa. 77, 11 Atl. 782.

[24] We now reach the second ground of the motion in arrest of judgment; that is, the ground that the verdict was rendered by only one juror. While the verdict reads: "We the juror find the defendant guilty as charged, J. O. Rawls, Foreman"—instead of "We the jurors," or "We the jury," find, etc., yet by reference to the minutes of the court in this case, which minutes form a part of the record herein, it appears that the error made by the foreman of the jury, which was manifestly a clerical one, in writing "juror" for "jurors," or "juror" for "jury," was corrected by polling the jury. In other words, after the foregoing verdict was rendered, the minutes show that:

"On request of counsel for defendant, each juror was individually polled, and responded that the verdict rendered was his verdict. Whereupon the verdict was ordered filed and recorded, and defendant remanded to jail for sentence."

The polling of the jury, as stated, corrected the foregoing clerical error, for it shows that the verdict rendered was the verdict of each of the twelve jurors.

For the foregoing reasons, the verdict and the sentence appealed from are affirmed.

O'NIELL, C. J., dissents from the ruling on bill 5.

Rehearing refused by the WHOLE COURT.