HIGGINS', Justice.
 

 This is an appeal from a verdict of a jury finding the defendant guilty of murder and a sentence by the court condemning him to death by hanging.
 

 Six bills of exceptions were reserved in behalf of the defendant. The first bill was reserved to the trial judge’s refusal to grant a motion for a continuance. The relevant facts in connection therewith are as follows:
 

 On July 21, 1934, defendant, a negro man, was arrested for shooting and killing a deputy sheriff, a white .man, who had gone to defendant’s home in the morning, to arrest him, without a warrant, for failure to comply with the request of the authorities to dip his mule, as required by quarantine regulations under the provisions of Act No. 6 of 1930, designed for the purpose of eradicating ticks. In the affray, the defendant was seriously wounded by being struck by
 
 *64
 
 a pistol shot which passed through his right thigh. His brother was mortally wounded as a result of being shot in the stomach, dying in jail that night; another brother was also wounded in the leg; and a third brother was shot through the hand.- The whole family, including the mother, father, children, and an uncle, were arrested and confined to jail. The mother, the brother who was shot through the hand, and the defendant were charged as principals, and the rest of the family were held as material witnesses. It appears that there was bitter public feeling against them, which resulted in attempts to lynch them which- attempts were frustrated by the vigilance, fortitude, and foresight of the sheriff and his deputies.
 

 On July 24, 1934, the defendant, his brother and mother, were indicted by the grand jury for murder, at Franklin ton, the parish seat. The accused were arraigned the same day at about 3 o’clock p. m., and an attorney was appointed to represent them. They pleaded not guilty, and the district judge set the case for trial on Monday, July 30, 1934.
 

 The attorney went to the jail about 6 o’clock the same evening, and the indicted-parties expressed a desire to employ other counsel. The attorney appointed by the trial judge that night informed the other attorney at Bogalusa of the wishes of the accused to engage his services. The next morning, July 25, 1934, counsel went to the jail and interviewed his prospective clients and spent the remainder of the day in consultation with them and their friends, in arranging to -be employed and to be paid for his services. It appears that two attorneys experienced in the practice of criminal law were employed as special counsel to assist in the prosecution. On the evening of July 27th, the attorney employed to represent the defendants advised h'is clients that he would need the assistance of additional counsel, and the following day, Saturday, July 28th, another attorney was employed by the accused.
 

 When the case was called for trial on Monday, July 30th, the state requested a severance, which was granted by the court, and elected to try, the defendant, Jerome Wilson, first.
 

 Counsel for the defendant filed a motion for a continuance on the grounds that, notwithstanding diligent efforts on their part since' their employment, they were unable, under the situation with which they were confronted, to complete the preparation of the proposed defense in behalf of their clients, due to lack of time allowed by the court from the time the accused were arraigned on July 24th and the setting of the trial on July 30th; that, due to the fact that their clients and the members of their family were placed in separate cells in the jail, they were without their co-operation and assistance in securing desired detailed information, particularly as to the locus in quo; that, due to the wound that the defendant received in his extreme upper right thigh, medically termed “upper third,” he was suffering and unable to give proper assistance to his attorneys in preparing the defense; and that
 
 *66
 
 Ms health and life might be endangered by subjecting him to a triál at that time.
 

 The jail physician testified that the defendant would not suffer any pain as long as his leg remained immobile, but that he wa,s unable to stand or walk on that member ; that he had had fever through the Friday preceding the trial; that he had passed the crisis, but that he had to be watched and had to be lifted or carried from the jail to the courthouse and back; and that he did not think that the mental condition of the accused had been impaired.
 

 In his per curiam, our learned brother below gives as Ms reasons for overruling a motion for a continuance that the first counsel employed by the accused on July 25th was experienced in the practice of criminal law; that most of the witnesses to the killing, being in jail, were accessible; that the accused did not appear to be in pain and otherwise appeared to be normal; • that his health would not likely be jeopardized by him being subjected to trial; and that there was adequate time within which to prepare the defense, since no complicated questions of law or expert testimony were involved in the trial of the ease.
 

 In the case of State v. Roberson, 157 La. 974, 103 So. 283, we said:
 

 “Court erred in refusing continuance where counsel were given only four days in which to prepare for defense of two wholly distinct murder prosecutions, of which four days one was a Sunday, and another not available to one of counsel because of a previous engagement already undertaken by him. * * *
 

 “The record shows that the trial began Monday night, September 15th, and continued through Tuesday and Wednesday, September 16th, 17th; that the case was submitted to the jury on Wednesday, September 17th, who brought in their verdict on Thursday, September 18th; that defendants’ motion for a new trial was overruled on Saturday, September 20th, on which day also defendants were sentenced, their bills of exception signed, and their appeal taken.
 

 “It is quite true that the matter of granting or refusing a continuance lies in the sound discretion of the trial judge, which will not be interfered with unless in extreme cases, but in our opinion this is one of those extreme cases. As we have seen, on the afternoon of Wednesday 10th the case was fixed for trial for the forenoon of Monday the 15th; that is to say,
 
 on the fifth day thereafter. To say nothing of capital cases in ichich this court has held the fixing of such a case within less time than six days to have been improper, we also find one case
 
 in which this court has held that a fixing
 
 for the sixth day did not allow sufficient time for preparation,
 
 to wit,
 
 State v. Martin, 145 La. 35, 81 So.
 
 747, and
 
 no case in which any less time was thought sufficient.
 
 * * * State v. Johnson, 36 La. Ann. 852, and State v. Chitman, 117 La. 950, 42 So. 437.
 
 Not once has this court approved the fixing of such a case
 
 for any earlier than the
 
 seventh day thereafter
 
 except in State v. Gilliard, 143 La. 604, 78 So. 978, whereip the case was fixed for the
 
 sixth day after arraignment;
 
 but it appeared that counsel had been employed and at work on the case more than ten days before the trial.
 

 
 *68
 
 “On the other hand, this court has approved of the fixing of such cases for the eighth day thereafter. * * *
 

 “In the case before us we find that counsel were given only four days in which to prepare for the defense of two wholly distinct capital cases, of which four days one was a Sunday, and another not available to one of the counsel because of a previous engagement already undertaken by him.
 

 “We think the trial judge erred in refusing the continuance.” (Italics ours.)
 

 See, also, State v. Satcher, 124 La. 1015, 50 So. 835; State v. White, 163 La. 386, 111 So. 795; State v. Ewell, 150 La. 385, 90 So. 733; State v. Martin, 145 La. 35, 81 So. 747; State v. Deschamps, 41 La. Ann. 1051, 7 So. 133; State v. Ferris, 16 La. Ann. 425; State v. Gunn, 147 La. 373, 85 So. 44; State v. Chitman, 117 La. 950, 42 So. 437.
 

 We do not believe that there can be any definite rule set as far as time is concerned, in order to be able to say whether or not the accused was allowed adequate time within which to prepare his defense in all cases. It is because of this fact that the lawmaker has vested the trial judge with discretion in granting or refusing continuances. This court has time and again held that it would not interfere with the ruling of the trial court in refusing a continuance, unless there was an abuse of such discretion. Article 320, Code of Criminal Procedure; State v. Dwyer, 159 La. 399, 105 So. 410; State v. White, 156 La. 770, 101 So. 136; State v. Jack, 139 La. 885, 72 So. 429; State v. Cloud, 130 La. 955, 58 So. 827, Ann. Cas. 1913D, 1192; State v. Perry, 51 La. Ann. 1077, 25 So. 944.
 

 Did the trial judge err in exercising his discretion in the instant case by acting in such a way as to deprive the accused of his right to a fair and impartial trial with the assistance and benefit of counsel?
 

 There were three defendants jointly indicted. Counsel did not know until the morning of the trial, July 30th, whether or not the state would try all three jointly or ask for a severance. The defenses of the respective accused might well be different under the circumstances surrounding the killing and necessarily involve different questions of law. A bitter public feeling and resentment against the accused resulted in hostile demonstrations, which necessitated the keeping of all of the members of the family in jail, pending the investigation and trial. The attorneys for the defense were required to make their investigation and preparation without the assistance and cooperation of the relatives of the accused, because of their incarceration. One member of the family having been fatally wounded, died in jail on the night of July 21st Three other members of the family, including the defendant, Jerome Wilson, were shot Defendant’s wound was serious and he had temperature through Friday, July 27th. Eliminating the time required to make arrangements for the employment of the first counsel for the defense and the intervening Sunday, he had three full days in which to make his preparations and the second counsel who was employed on Saturday, July 28th, had less than two days before the trial.
 

 
 *70
 
 Taking all of the above circumstances into consideration and the fact that this is a capital case, it is our opinion that the refusal of the trial judge to grant a continuance deprived the defendant of a reasonable opportunity to prepare his defense and therefore our learned brother below committed reversible error.
 

 Those charged with the administration of criminal justice are to be commended and not censured for their promptness in apprehending and trying persons charged with violations of the law. But the celerity with which it is done must not- be converted into the denial of a fair and impartial trial.
 

 It is only natural that there should be public indignation where it might appear that a foul and brutal killing took place, but it should not be permitted to interfere with the orderly process of justice in such a way as to deprive the ac'cused of. his constitutional rights and guaranties.
 

 In justification of the officials in charge of the prosecution and the district judge, it might be well to say that the criminal term of court would have expired on August 30th, and an effort was made to dispose of this case, in order to keep it from going over until the following term of court.
 

 Our conclusions with reference to the first bill of exception makes it unnecessary for us to consider the remaining bills.
 

 For the reasons assigned, the verdict of the jury and sentence of the court are annulled and avoided, and it is now ordered, adjudged, and decreed that the defendant be granted a new trial, according to law.