FOURNET, Chief Justice.
The defendant, Francis Lejeune, having been charged in a bill of information with the crime of pandering in violation of R.S. 14:84[1] in that on July 29, 1964, he “did intentionally maintain a place known as the Balanese Lounge located at 711 Graceland Avenue, in the City of Abbeville, Louisiana, where prostitution is habitually practiced,” appeals his conviction of attempted pandering and sentence to serve two and one-half years in the state penitentiary, relying for the reversal thereof on errors allegedly committed during the course of the trial, to which objections were timely made and seven bills of exception perfected.
The first bill of exception was reserved when the trial judge, refused the defendant’s motion for a change of venue, and, in the alternative, a continuance until public hostility subsided, being sought on the basis that he could not get a fair and impartial trial because of the prejudice engendered against him by the extensive publicity given his arrest and charge by the radio, television, and local weekly newspaper media. The next two bills were reserved during the hearing on this motion; the first one when the trial judge sustained the prosecution’s objection to defense witness, Joe Choat, News Editor of the Abbeville paper, answering the question what he meant by the caption “Most Wanted” which appeared under defendant’s picture in the August 6, 1964, edition of the paper; the other one when, according to the recital in the bill, the trial judge refused to permit the answer of the witness to be recorded while defense counsel were perfecting the second bill.
The burden of establishing by legal evidence that the applicant for a change
*687 of venue could not secure a fair trial in the parish where he was charged for committing a crime, rests upon the applicant. R.S. 15:293, State v. Faciane, 233 La. 1028, 99 So.2d 333, and authorities cited therein. The test to he applied is whether there can he secured with reasonable certainty from the citizenry of the parish a jury whose members will be able to try the case uninfluenced by what they might have heard in the matter, and who will give the accused the benefit of any reasonable doubt which might arise from the evidence or from the lack thereof. State v. Wilson, 240 La. 1087, 127 So.2d 158; State v. Scott, 237 La. 71, 110 So.2d 530; State v. Rogers, 241 La. 841, 132 So.2d 819. As pointed out in 22 C.J.S. Crim.Law § 196, p. 521, “Newspaper articles and other media of publicity with reference to the crime, even when denunciatory of accused, are not in themselves sufficient to show prejudice, unless they so arouse public hostility as to preclude a fair trial.” See, also, State v. Rini, 153 La. 57, 95 So. 400; State v. Swails, 226 La. 441, 76 So.2d 523; Beck v. Washington, 369 U. S. 541, 82 S.Ct. 955, 8 L.Ed.2d 98. The granting of a change of venue is to be exercised with caution and always rests in the sound discretion of the trial judge, whose ruling denying the motion for same will not be disturbed unless the evidence affirmatively shows his ruling was unfair and a clear abuse of judicial discretion. State v. Roberson, 159 La. 562, 105 So. 621; State v. Collier, 161 La. 856, 109 So. 516; State v. Washington, 207 La. 849, 22 So.2d 193; State v. Pearson, 224 La. 393, 69 So. 2d 512.
In his per curiam to the first bill, the trial judge, in our opinion, fairly summarized and evaluated the evidence and we think properly declined defendant’s motion for a change of venue or a continuance, stating: “Accused attempted to show, through various witnesses that he could not get a fair trial in Vermilion Parish because of the newspaper and other publicity. The witnesses which he placed on the stand were obviously interested and partial, with the exception of the witness Roy Hebert who testified he thought the accused was guilty but said that he, himself, could be fair and he further testified that he had never heard any one say that the accused was guilty. The other witnesses as follows, Joseph Guidry knows him well; the accused is his customer; Gladstone Hebert, a taxi driver was obviously partial, the accused having given him substantial business; Percy States, a former Deputy Sheriff who was discharged by the present Sheriff was obyiously partial; Joseph Touchet, related by marriage. Additionally, he took a message to the Sheriff of Vermilion Parish for the accused, the message not being disclosed. The other witness used by the accused was Whitney Noel who testified that he could not answer for any one else and further that he thought *689 that the accused could get a fair trial, although he, himself, had made up his mind. He didn’t indicate which way. The State placed Mr. Charles LeBlanc, a former Sheriff of Vermilion Parish, Mr. Alcide Lene, Chief of Police of Abbeville, Louisiana, and Mr. Irby Hebert, Clerk of Court on the stand. Their testimony was substantially to the effect that the accused could be given a fair trial. Of the original list of 30 jurors the Court had excused 10 for medical and other reasons and two for lack of education, leaving a total of 18 jurors. The entire jury of five, in addition to the alternate, was chosen with no difficulty from these 18 veniremen.” Moreover, it is apt to observe that the jury was selected without the defendant having to exhaust all of his peremptory challenges; furthermore, the jury obviously entertained no prejudice against the defendant as it rendered a verdict of a lesser offense.
The next two bills are clearly without merit. As pointed out by the trial judge, the opinion of witness Joe Choat as to what he meant when he used the caption “Most Wanted” under a picture of the defendant appearing in one of his newspaper articles, had no relevancy in determining whether the defendant could get a fair trial in the Parish of Vermilion, the criteria being the interpretation placed by the pubic generally on the phrase in connection with the article. Even so, however, he permitted the witness to answer and to have this testimony recorded.
In conformity'with the three-day period allotted to the defendant within which to file pleas and motions at the time of his arraignment on September 21, 1964, the defendant filed a motion for a bill of particulars seeking answers to five specifications [2] and on the date set for trial, December 7, 1964, filed a motion for a continuance based on the fact the District Attorney did not file his answer to the bill of particulars until that very day, whereupon the trial judge granted the continuance, ordering the District Attorney to amend his answer on the 8th and fixing the trial for the 10th of December, to which the defendant objected, claiming he could not properly prepare his defense and perfected a bill' of exception. Another bill was reserved to the trial judge’s ruling that the amended answer was sufficient.
*691 Counsel for defendant concede the granting or refusal of a continuance lies within the sound. discretion of the trial judge and his ruling will not be disturbed in the absence of abuse; however, they contend the judge abused his discretion in the instant case, citing State v. Wilson, 181 La. 61, 158 So. 621.
While the Wilson case supports counsel in the law they are relying on, we think this case affords them little solace in view of its facts which are radically different from those of the one at bar. In that case, an indictment was returned on the 24th of July, 1934, against Jerome Wilson, (a Negro), his mother and a brother for murdering a white deputy sheriff on July 21, 1934. The three, represented by counsel appointed by the court, were arraigned at 3:00 the same day and the case was set for trial on July 30, 1934. In the meantime, they secured counsel of their choice and on the morning of the trial, the District Attorney asked for a severance, which was granted by the court, and he elected to try Jerome Wilson first. Whereupon, defense counsel, alleging that under these facts and circumstances they could not make necessary preparations to defend their clients, moved for a continuance, which was denied by the trial judge. This court, in reversing, stated the widespread bitter feeling and hostile demonstrations against the accused had necessitated keeping all members of the family in jail pending the investigation and trial. Four of the family had been shot — one brother dying in jail — and the defendant Jerome Wilson had been seriously wounded, having fever through Friday, July 27th, and was thus limited in participating in his own defense. In addition, the attorneys were handicapped in their preparation for trial as they were-unable to get maximum cooperation and assistance from. the relatives as they were incarcerated in separate cells from the accused. Clearly under these circumstances, plus the fact that the defense áttorney first engaged had a maximum of three full legal days to prepare his case, and assistant counsel had only one, counsel did not have 'sufficient time within which to adequately prepare for trial.
A mere reading'of the amended answer to the bill of particulars filed by the District Attorney on the 8th of December will readily disclose that it was in conformity with the order of the court to supply information relative to that part of his answer which stated he would show intent, knowledge and that the offense was one of system by proving “other similar acts prior to April 29, 1964, and subsequent to July 29, 1964,” as the supplemental answer sets forth places, dates, the parties involved and the method in which compensation was shared.
The last two bills of exception were reserved by the defendant when the *693 triabjudge permitted, over objection by the defense, one of the girls involved with the •defendant’s' business to answer questions relative to what she was doing at the defendant’s business subsequent to the date in the bill of information, defense counsel maintaining, on the reliance of State v. Gardner, 198 La. 861, 5 So.2d 132 and State v. Pailet, 246 La. 483, 165 So.2d 294, such •evidence is admissible only when it is neces-^ sary to rebut an inference that the act with which the accused is charged was committed by accident or mistake.
The Gardner and Pailet cases are inapposite from both a legal and factual standpoint and, in our opinion the evidence is admissible, as held by the trial judge, to show knowledge, intent, and continuity of the offense under the provisions of R.S. 15:445 [3] and R.S. 15:446[4].
For the reasons assigned, the conviction and sentence are affirmed.

. The defendant requested the following information:
“1. The exact time or times of the alleged offense.
“2. The names of the prostitute or prostitutes who allegedly practiced prostitution on the named premises.
“3. The names of the male or males with whom the alleged prostitute or prostitutes allegedly had sexual intercourse.
“4. The mode and manner of compensation allegedly received by the alleged prostitute or prostitutes.
“5. The time and place when the compensation was allegedly received.”

. R.S. 15:445 provides:
“In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.”

. R.S. 15:446 states:
“When knowledge or intent forms an essential part of' the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.”