278 So.2d 17 (1973)
STATE of Louisiana
v.
Willie D. RICHMOND.
No. 52891.
Supreme Court of Louisiana.
May 7, 1973.
Rehearing Denied June 11, 1973.
*19 W. Charles Brown, Mansfield, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Thomas A. Self, Dist. Atty., D. Scott Brown, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The defendant was convicted of the murder of James F. Adams and sentenced to death. In his appeal to this Court, the defendant has grouped the numerous bills of exceptions reserved and perfected during the proceedings in nine categories for our consideration.
During the late afternoon of March 9, 1971, James F. Adams, a DeSoto Parish Police Juror, and his wife were shot and killed during the robbery of their small grocery store near Mansfield. The State's theory of the case was that the robbery was perpetrated by Willie D. Richmond, the defendant, with three accomplices and that Richmond did the shooting. Two of the accomplices testified for the prosecution at the trial.
Bills of Exceptions Nos. 1 to 8 pertain to the trial court's denial of the defendant's Motion for a Change of Venue.
As argued in the defendant's brief, the cumulative issue is whether the trial court properly denied a change of venue.
Article 622 of the Louisiana Code of Criminal Procedure provides:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
"In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
In State v. Lejeune, 248 La. 682, 181 So. 2d 392 (1965), this Court stated:
"The test to be applied is whether there can be secured with reasonable certainty from the citizenry of the parish a jury whose members will be able to try the case uninfluenced by what they might have heard in the matter, and who will give the accused the benefit of any reasonable doubt which might arise from the evidence or the lack thereof."
The burden is upon the defendant to establish that he cannot obtain a fair trial in the parish where the prosecution is pending. State v. Curry, 262 La. 280, 263 So.2d 36 (1972); State v. Poland, 255 La. 746, 232 So.2d 499 (1970).
The homicide occurred on March 9, 1971. The hearing on the Motion for a Change of Venue took place on November 8, 1971, nine months later. The three-day trial started on April 3, 1972, some 13 months after the crime was committed. Upon arrest in Caddo Parish, the defendant was kept in the jail of Caddo Parish, the parish adjoining that in which the crime was committed and trial held.
Local newspaper coverage was extensive, including the publication of the accused's picture upon his arrest. The Mansfield Enterprise[1] *20 published two "Extra" editions on March 10, 1971 and March 22, 1971.[2] On March 24, 1971, a regular edition offered ten thousand dollar reward by the police jury for information leading to the capture, arrest and conviction of the perpetrators of this crime and of two other unsolved murders that occurred in the DeSoto Parish within the past year.[3]
During the hearing, the trial judge heard the testimony of sixteen witnesses. Seven testified that they were of the opinion a fair and impartial trial could be had, while seven said a fair trial could not be had; two couldn't say one way or the other.[4]
The trial judge, of course, was in a position to evaluate the credibility of the witnesses and to carefully weigh their testimony. Apart from the credibility of the witnesses, however, consideration was given to the limited circulation of the local newspaper carrying the news items and the lapse of time after the publicity.
A careful review of the testimony and exhibits convinces us that the trial judge did not abuse his discretion. See State v. Poland, supra; State v. Pearson, 224 La. 393, 69 So.2d 512 (1954).
The bills of exceptions are without merit.
Bill of Exceptions No. 9 alleges the trial court erred in sustaining the State's challenge of prospective jurors for their scruples against the death penalty. Defendant relies upon Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), reh. den. 393 U.S. 898, 89 S.Ct. 67, 21 L.Ed.2d 186 (1968).
Since the trial of this case, the United States Supreme Court invalidated the death penalty under present procedures in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 576 (1972). Since the death penalty can no longer stand, this bill of exceptions is moot.
Bill of Exceptions No. 20 was taken to the trial court's ruling that, despite the prospective juror's attorney-client relationship, he would not be excused for cause.
The prospective juror, Mr. Sidney Platt, was Registrar of Voters for DeSoto Parish. Pending before a Federal Court was a suit regarding the re-apportionment of the Parish, and counsel for the parish in this instance was the District Attorney's office. Further Mr. Platt had personally employed defense counsel, Mr. Brown, in pending litigation of another nature. Defendant alleges that these associations were sufficient bases for Mr. Platt's exclusion for cause.
After a thorough examination of the prospective juror, the trial judge said he was satisfied that Mr. Platt could have rendered a fair verdict in the case.[5] This Court has repeatedly held it is within the sound discretion of the trial judge to determine the competency of a juror. We find no abuse of discretion in this instance. *21 La.C.Cr.P. Arts. 787, 797. See State v. Square, 257 La. 743, 244 So.2d 200 (1971). This bill is without merit.
In an objection to the trial court's denial for a challenge for cause, the defendant also reserved Bill of Exceptions No. 12. In this instance, prospective juror Alex Charles Lafitte testified that he was a friend of the victim for the past 35 years. Nevertheless, the trial court satisfied itself "there was nothing shown that would indicate that he (Mr. Lafitte) has any prejudice or any animosity in the case," that in fact Mr. Lafitte's friendship with the victim and his family was really no more than an "acquaintanceship," "a casual friendship;" in any event, it was not such a relationship that would have affected his reaching a just and fair verdict.
The ruling denying the challenge for cause is correct. This Court has held:
"... It is not per se evidence of partiality that a prospective juror is friendly with the party injured by the offense. The relationship must be such that it is reasonable to conclude that it would influence the juror in arriving at a verdict ..." State v. Higginbotham, 261 La. 983, 261 So.2d 638 (1972).
We conclude that there was no abuse of discretion. LSA-C.Cr.P. Art. 787. See also State v. Rogers, 241 La. 841, 132 So. 2d 819, cert. denied, 370 U.S. 963, 82 S.Ct. 1589, 8 L.Ed.2d 830 (1962).
The Court, on its own motion, excused prospective juror Roosevelt Landers, by virtue of the fact it did not think Mr. Landers qualified to serve as a juror.
La.C.Cr.P. Art. 787 provides:
"The court may disqualify a prospective petit juror from service in a particular case when for any reason doubt exists as to the competency of the prospective juror to serve in the case."
Defense counsel argues, however, that by the dismissal of Mr. Landers, a Negro, the trial court deprived the defendant of a member of his own race on the jury. Without more, no basis exists for disturbing the verdict. Such an allegation is inadequate to show racial discrimination.
The bill is without merit.
Bills of Exceptions Nos. 15, 16, 17 and 18 were taken during the State's direct examination of two State witnesses, Albert Charles Mims and Linda Mims. In response to the State's questions, Albert Charles Mims testified that the defendant less than three hours after the homicide spontaneously reacted to a newscast by exclaiming that the assailants wore black shirts. After a lengthy examination in which the evidence was placed before the jury without objection, defense counsel moved "that all the testimony be stricken." He later objected to its admissibility. The two grounds assigned were that the testimony was hearsay and not part of the res gestae. After a lengthy colloquy, the defendant added a third ground: "It was incumbent upon the district attorney to notify the defense within 24 hours of the commencement of trial of such an inculpatory or incriminating admission.
The trial judge overruled the motion to strike the testimony and the objection.
The testimony of Linda Mims corroborated that of Albert Charles Mims relating to the spontaneous remarks of the defendant shortly after the crime.
A motion to strike testimony is unknown to the criminal law of Louisiana. To bar testimony at the trial, a contemporaneous objection is required. See State v. Isaac, 261 La. 487, 260 So.2d 302 (1972) and the authorities cited therein.
Article 841 of the Louisiana Code of Criminal Procedure provides:
"An irregularity or error in the proceedings cannot be availed of after a verdict *22 unless it is objected to at the time of its occurrence and a bill of exceptions is reserved to the adverse ruling of the court on such objection." . . . (Italics ours.)
The testimony at issue had been presented to the jury without objection. The motion to strike the testimony had no basis in law. The objection to the admissibility of the evidence was untimely. LSA-C.Cr. P. Art. 841. See State v. Blankenship, 231 La. 993, 93 So.2d 533 (1957); State v. Dwyer, 133 La. 731, 63 So. 305 (1913).
Assuming that the objection was timely, however, we are of the opinion that it lacks merit.
The defendant made the remarks spontaneously less than three hours after the double homicide committed in the course of a robbery. The remarks tended to implicate the defendant. Clearly, they were not inadmissible hearsay.
The trial judge's Per Curiam correctly disposes of defendant's third ground for the objection:
"There is no merit to the `third' reason as given by counsel for the defense. I have no knowledge of any law which requires that the State notify the defense 24 hours before commencement of trial of an inculpatory or incriminating admission, and counsel for the defense did not cite any authority to that effect. Here again the reminder must be made that the defense's objections were made long after the witness had testified before the jury.
"It could be that counsel had in mind some other statutory objection relating to admissibility of evidence vel non; however it is not the trial judge's duty to, nor do I know of any authority which permits the Court to ex proprio motu supply or raise any objection as to admissibility of evidence. There is a provision of law which holds that where the State intends to introduce a confession or inculpatory statement in evidence, it shall advise the defendant in writing prior to the beginning of the State's opening statement, LSA-C.Cr.P. article 768, but this clearly was not the objection that was raised by counsel for the accused, and therefore, the Court was not called upon to rule on that question.
"It has repeatedly been held and is well settled that a bill of exception must state the grounds of objection or point out specifically the errors complained of in order that an opportunity may be given the trial judge to correct them, and that, if it is not sufficiently specific, it will not avail the party raising it. State v. Dorsey, 262 La. 785, 264 So.2d 644; State v. Labat, 226 La. 201, 75 So.2d 333; State v. Antoine, 189 La. 619, 180 So. 465; State v. Green, 36 La.Ann. 185; State v. Carroll, 160 La. 199, 106 So. 782; State v. Keifer, 165 La. 47, 115 So. 363."
We conclude that the bills of exceptions lack merit.
Bill of Exceptions No. 21 alleges the trial court erred in sustaining the qualification of Mr. Ray Heard, Director of the Northwest Louisiana Crime Laboratory, as a firearms identification expert. Notwithstanding the defense counsel's objection, he did concede that Mr. Heard was at least qualified in the field of criminology. In any event, competency of an expert is a question of fact and the trial judge has a wide discretion in passing on the qualifications of such a witness. LSA-R.S. 15:466. The trial court's ruling will not be disturbed in the absence of manifest error. State v. Richey, 258 La. 1094, 249 So.2d 143 (1971).
We find no merit in the bill.
Although the accused was on trial only for the killing of Mr. Adams, Mrs. Adams was killed at the same time. Bill of Exceptions No. 22 was taken by the defendant to the admission of testimony from Mr. Heard about bullets allegedly removed from Mrs. Adams' body.
*23 Both victims were slain in the same criminal episode. Hence, the evidence is admissible to show how the crime occurred.
There is no merit to Bill of Exceptions No. 22.
The defendant reserved Bills of Exceptions Nos. 23, 24, 25 and 27 to certain testimony of defendant's accomplices in which they related what was done and said by the defendant during the robbery-murder and the flight from the scene. Defendant's objection at the trial was that the actions and statements were not part of the res gestae and were hearsay. The testimony as to the actions of the defendant represented eye-witness testimony relating to the commission of the crime. The testimony of the statements made at the time formed part of the res gestae and was admissible. LSA-R.S. 15:447, 15:448; State v. Reese, 250 La. 151, 194 So.2d 729 (1967).
By brief in this Court, defendant argues for the first time that the statements made were inculpatory statements within the intendment of Article 768 of the Louisiana Code of Criminal Procedure, requiring written notice of their use, and such written notice was not given.
We, of course, cannot consider an objection ground to the admission of evidence not raised in the trial court and ruled upon by the trial judge. See State v. Labat, 226 La. 201, 75 So.2d 333 (1954); State v. Antoine, 189 La. 619, 180 So. 465 (1938).
In any event, the objection lacks merit. Article 768, requiring the District Attorney to give written notice of his intention to use inculpatory statements at the trial, has no application to statements made during the course of the criminal activity and forming part of the res gestae.
Recently, in State v. Clouatre, 262 La. 651, 264 So.2d 595 (1972), this Court explained:
"Inculpatory statements which are voluntary and part of the action at the time the crime is being committed are in no sense to be governed by the rules applicable to confessions or inculpatory statements set forth in Article 768 of the Code of Criminal Procedure."
These bills of exceptions are without merit.
Bill of Exceptions No. 34 was taken by the defendant to the trial court's adverse ruling on the defendant's Motion for a New Trial.
All points raised in the defendant's Motion have been disposed of in the previous bills except, defense counsel's allegation that the circumstance that the jury deliberated less than fifteen minutes before bringing in its verdict demonstrated "that the jury had decided the case before hearing the evidence."
We know of no law which specifies the time a jury should deliberate. In any event, the allegation does not establish misconduct on the part of the jury. The shortness of time spent by a jury in deliberating on a verdict is not a ground for granting a new trial. See State v. James, 246 La. 1033, 169 So.2d 89, 112 (1964) reversed on other grounds, 382 U.S. 36, 86 S.Ct. 151, 15 L. Ed.2d 30 (1965).
We have considered other bills of exceptions, but find them insubstantial.
Finally, defendant asserts that his death sentence is invalid under the holding of the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 576 (1972). In that case, the United States Supreme Court held that the death penalty could not be constitutionally imposed under present procedures.
The crime of which the defendant stands convicted is one that shocks civilized men. It can only be characterized as brutal and revolting. Nonetheless, the death sentence must be annulled in compliance with the above decision and the case remanded to the trial court for the imposition of a sentence of life imprisonment.
*24 For the reasons assigned, the conviction is affirmed. The death sentence is annulled and set aside and the case is remanded to the district court for the imposition of a sentence of life imprisonment according to law.
BARHAM and DIXON, JJ., concur.
NOTES
[1] Paid circulation of 3,275. DeSoto parish population: 22,764 (April 1, 1970).
[2] Publisher Blanchard testified that after printing up 500 copies, he issued 600 more to meet the public demand. He said that a lot of people "came in and wanted one. Well, it was kind of a souvenir." (R-155).
[3] This reward was not posted until after the Adams murder, the one for which the accused was tried.
[4] Those who testified a fair trial could be had were (1) Sheriff Webb (R-142); (2) Mr. Blanchard, newspaper publisher (R-159, 165); (3) Mr. Speights (R-172); (4) Mr. Mize (R-179); (5) Mr. Freeman, a police juror (R-182); (6) Mr. Smith, a friend of the victim (R-198); (7) Mr. Hill (R-208). Seven others did not think a fair trial could be had in the Parish: (1) Mr. Johnson (R-175); (2) Mrs. Archie (R-176); (3) Mr. Clark (R-184); (4) Mrs. Patterson (R-186); (5) Mr. McFarland (R-186); (6) Mrs. Nervis (R-191); and (7) Reverend Carter (R-196). Two others were noncommital: (1) Mr. Robbins (R-170); and (2) Mr. Sayers (R-168), who testified: "They would get juse as fair one here as anywhere else."
[5] The juror did not serve because he was later challenged peremptorily.