284 So.2d 317 (1973)
STATE of Louisiana
v.
Willie D. RICHMOND.
No. 53407.
Supreme Court of Louisiana.
September 24, 1973.
*320 W. Charles Brown, Newton H. Harris, Mansfield, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Thomas A. Self, Dist. Atty., D. Scott Brown, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant-appellant, Willie D. Richmond, was indicted, tried and convicted for the murder of Mrs. Vera Adams. R.S. 14:30. He was sentenced to death.
On March 9, 1971 Mr. John F. Adams and his wife, Mrs. Vera Adams, were murdered during the course of an armed robbery of their grocery store in Mansfield, Louisiana. Mr. Adams was a local police juror and a prominent citizen of Mansfield. The case attracted extensive newspaper, radio and television coverage in Mansfield and the surrounding area, including nearby Shreveport.
The defendant was arrested in Caddo Parish and charged with the double murder of Mr. and Mrs. Adams. He was held in the Caddo Parish jail, his whereabouts undisclosed to the public, as a precaution against the strong public reaction to the slayings.
Defendant-appellant was first brought to trial for the murder of Mr. Adams. The three day trial began on April 3, 1972, and resulted in the defendant being convicted and sentenced to death.
On April 13, 1972 defense counsel moved for a change of venue in the instant proceedings, dealing with the murder of Mrs. Adams. The trial judge granted the change of venue and ordered the trial transferred from DeSoto Parish to neighboring Sabine Parish. Trial was held beginning June 19, 1972 in Sabine Parish in the town of Many, about fifty miles south of Mansfield.
Defendant reserved and perfected twenty-eight bills of exceptions; however, bills numbered 2, 3, 5, 11, 12, 17, 23 and 25 were neither briefed nor argued and are considered abandoned.
Bill of Exceptions No. 1
This bill was reserved when the trial judge overruled a plea of former jeopardy filed by defense counsel. The plea was grounded on the fact that the defendant had previously been tried and convicted of the murder of Mr. James F. Adams, husband of the victim in this case. The two murders occurred in a common robbery-murder incident on March 9, 1971. Defense counsel argues in brief, without citation of authority, that since the two murders arose out of the same facts and circumstances, and the same basic evidence was used to secure both convictions, the constitutional rights of the defendant to not be placed twice in jeopardy for the same offense have been violated.
Both article I, § 9 of the Louisiana Constitution of 1921 and the Fifth Amendment to the United States Constitution prohibit placing a defendant in jeopardy more than once for any criminal offense. The Fifth Amendment prohibition against double jeopardy has been held applicable to the states through the due process clause of the Fourteenth Amendment. Benton v. *321 Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1968).
Our statutes are in accord. C.Cr.P. 591 provides in pertinent part:
"No person shall be twice put in jeopardy of life or liberty for the same offense. . ."
C.Cr.P. 596 provides:
"Double jeopardy exists in a second trial only when the charge in that trial is:
"(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
"(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
In explaining this latter subsection, upon which defendant-appellant obviously relies, the Official Revision Comment to article 596 states:
"(d) Clause (2) of the above Art. 596 is necessary to prevent multiple prosecutions for continuous offenses. For example, possession of stolen goods or narcotics may continue over a long period of time and may involve more than one object. Yet, obviously there should be only one prosecution for what is in effect one criminal course of conduct."
Under Louisiana law, only one crime can be charged in a single bill of indictment or information, unless specifically excepted by statute. C.Cr.P. 493. State v. Giangrosso, 263 La. 275, 268 So.2d 224 (1972). Additionally, contemporaneously committed crimes cannot be charged in separate bills of indictment or information and then consolidated for trial unless the defendant consents and the crimes are of such a nature that they could have been charged initially in a single bill of indictment. C.Cr.P. 706. Therefore, unless the State can proceed in the manner adopted in this case, i. e., with separate indictments and trials, the State will be forced to elect which of the contemporaneously committed crimes it will prosecute and abandon the rest.
We have previously held that when the defendant killed two people in one transaction the "killing of each was a separate homicide, a separate crime, . . ." State v. Cannon, 185 La. 395, 169 So. 446, 447 Cf. State v. Ysasi, 222 La. 902, 64 So.2d 213 (1953), a case factually very similar to the case at bar. In Ysasi, the defendant was tried and convicted of two separate batteries upon two different victims during the course of an altercation. A plea of former jeopardy was entered and overruled. The court noted that two separate and distinct batteries were committed, even though separated by only a few seconds. The fact that the same witnesses were necessary to prove the two batteries was held to be inconsequential, arising only coincidentally.
The jurisprudence of this court and the federal courts in the area of double jeopardy was considered in detail in the recent case of State v. Didier, 262 La. 364, 263 So.2d 322 (1972). In that case a sheriff was charged with robbery and theft after being convicted of malfeasance in office as a result of his participation in a scheme to rob scrap metal dealers. A plea of former jeopardy was entered and sustained by the trial judge. The State appealed.
A majority of the court found the plea of former jeopardy to be well founded. The court reasoned:
". . . the defendant's malfeasance consisted of his aiding and abetting the robbery-theft by failing to prevent it, to apprehend the participants, or to report the crime. This is the identical conduct which forms the evidence of the essential element to convict the defendant of the present robbery-theft through his so aiding and abetting it. Where the gravamen of the second offense is essentially included within the offense for which first tried, the second prosecution is barred because of the former jeopardy. State v. Bonfanti, 262 La. 153, 262 So.2d *322 504 (decided May 18, 1972); State v. Schneller, 199 La. 811, 7 So.2d 66 (1942); State v. Roberts, 152 La. 283, 93 So. 95 (1922)." (Emphasis added).
In the case at bar, essentially the same evidence was used in both prosecutions. The purpose for which the evidence was used, however, was very different. Evidence of the murder of Mrs. Adams at the initial trial of the defendant for the murder of Mr. Adams was introduced merely as part of the res gestae. The conviction of the defendant for the murder of Mr. Adams in no way required proof that the defendant also killed Mrs. Adams. Likewise at the trial for the murder of Mrs. Adams, evidence that the defendant also killed Mr. Adams was admissible as part of the res gestae, but formed no part of any essential element of the State's case. In neither instance was the defendant at any time in jeopardy for the murder of the other victim. As pointed out above, the State had no alternative under our law but to proceed as it did.
We should note here that this case is not one in which the doctrine of "collateral estoppel" is applicable. Here there was no essential issue of fact decided adversely to the State in the prior prosecution. Cf. Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971); Harris v. Washington, 404 U.S. 55, 92 S.Ct. 183, 30 L.Ed.2d 212 (1971).
This bill is without merit.
Bill of Exceptions No. 4
This bill of exceptions pertains to the trial court's denial of the defendant's motion for a change of venue.
Defendant had originally been charged with the murder of Mr. and Mrs. Adams in DeSoto Parish. Subsequent to defendant's conviction for the murder of Mr. Adams, venue for the trial of the second murder was changed from DeSoto Parish to Sabine Parish, which adjoins the former. Defendant then moved for a change of venue to a parish more remote from the occurrence of the offense, alleging that the residents of Sabine Parish had been exposed to the publicity surrounding the commission of the offense and that they were generally aware of the conviction obtained for the murder of Mr. Adams in adjoining DeSoto Parish.
Grounds for a change of venue are contained in C.Cr.P. 622, which provides:
"A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
"In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."
Clearly this article places the burden on the applicant, here the defendant, to show that prejudice or undue influence is extant in the parish where the prosecution is pending. State v. Curry, 262 La. 280, 263 So.2d 36 (1972); State v. Washington, 256 La. 233, 236 So.2d 23 (1970); State v. Poland, 255 La. 746, 232 So.2d 499 (1970). Further, the article requires a showing of more than mere knowledge by the public of the facts surrounding the offense for which the trial is being had. As stated in State v. Poland, supra, citing State v. Lejeune, 248 La. 682, 181 So.2d 392 (1965):
"The test to be applied is whether there can be secured with reasonable certainty from the citizenry of the parish a jury whose members will be able to try the case uninfluenced by what they might have heard in the matter, and who will give the accused the benefit of any reasonable *323 doubt which might arise from the evidence or from the lack thereof."
In the instant case, the applicant has failed to meet the burden of proof. His evidence consisted of one issue of the Mansfield Enterprise, a paper published in DeSoto Parish, and the testimony of one witness. The newspaper contained a straightforward story concerning the defendant's conviction under a rather large headline. There was no evidence introduced as to the circulation of the newspaper in Sabine Parish or the general impact the story may have had on the residents of Sabine Parish. The witness' testimony as to whether the defendant could be accorded a fair trial in Sabine Parish was equivocal and properly given little weight by the trial judge.
The granting or denial of change of venue rests within the sound discretion of the trial judge and a ruling denying the motion will not be disturbed unless evidence affirmatively shows that the ruling was erroneous and an abuse of judicial discretion. State v. Didier, 273 So.2d 277 (La.1973); State v. Poland, supra. Under the evidence presented to support the motion for change of venue it cannot be said that the trial court abused its discretion.
This bill is without merit.
Bill of Exceptions No. 6
This bill was reserved when the trial court denied a defense motion to excuse jurors. The motion was founded on defendant's contention that all prospective jurors residing in the northern part of Sabine Parish had probably been exposed to prejudicial publicity and should therefore be excused from the jury venire.
We agree with the trial judge that it would have been improper to exclude all prospective jurors from the northern part of the parish absent a showing that the individual veniremen had been exposed to and prejudiced by such pretrial publicity. The trial judge was correct in requiring defense counsel to inquire on voir dire as to the potential prejudice suffered by individual veniremen. C.Cr.P. 797.
This bill lacks merit.
Bill of Exceptions No. 7
This bill was reserved when the trial judge overruled a defense motion to quash. The motion was based on the defendant's contention that he had been denied a speedy trial.
We note from the record that much of the delay in bringing the defendant to trial on this charge was due to the court's consideration of motions made by defense counsel. Additional delay resulted from the decision by the trial judge to allow community feelings to subside after press coverage of this crime, in an attempt to insure the defendant a fair trial.
We find no merit in this bill.
Bills of Exceptions Nos. 8, 9, 10 and 13
These bills of exceptions pertain to the trial court's sustaining the State's challenge for cause based on the prospective juror's scruples against inflicting the death penalty. In each instance the venireman stated he could bring in a verdict of guilty without capital punishment.
For the reasons assigned in State v. Richmond, 278 So.2d 17 (La.1973), these bills of exceptions are moot.
Bills of Exceptions Nos. 14, 15 and 16
These bills were reserved in response to the overruling of challenges for cause, made on voir dire by defense counsel. In each instance, the challenge for cause was based on the fact that the prospective juror had some social or business contact with DeSoto Parish, the parish where the offense was committed, and lived in some proximity to that parish. Each of the challenged jurors stated unequivocally that he could render an impartial verdict based solely on the evidence presented at trial.
*324 The grounds urged by defendant do not fall within the grounds for challenge for cause set forth in C.Cr.P. 797. There was no showing of partiality under C.Cr.P. 797(2). The defense failed to establish any relationship which would give rise to a reasonable inference that the juror would be influenced thereby as provided in C.Cr. P. 797(3).
These bills are without merit.
Bill of Exceptions No. 18
This bill of exceptions was reserved when the trial court overruled defendant's challenge for cause of a juror, Valery McDonald. The challenge was grounded on statements by the juror on voir dire that he had discussed the case with others and that he had an opinion as to the guilt or innocence of the defendant.[1]
C.Cr.P. 797, in pertinent part, provides:
"The state or the defendant may challenge a juror for cause on the ground that:
"(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence."
This court has consistently held that it is not error to overrule a challenge for cause based on prior knowledge of the events or an opinion as to guilt or innocence where the juror states he will base his verdict solely on the evidence presented at trial and the trial judge is satisfied that the juror can render an impartial verdict. State v. Heard, 263 La. 484, 268 So.2d 628 (1972); State v. Square, 257 La. 743, 244 So.2d 200 (1971); State v. Rideau, 242 La. 431, 137 So.2d 283, reversed on other grounds, 373 U.S. 723, 83 S.Ct. 1417, 10 L. Ed.2d 663, on remand, 246 La. 451, 165 So.2d 282 (1964).
The voir dire examination as a whole reflects that the juror could lay his opinion and whatever knowledge he had aside and base his decision solely on the evidence presented at trial. State v. Heard, supra.
This bill is without merit.
Bill of Exceptions No. 19
This bill of exceptions pertains to the denial of a motion for a mistrial made after the juror challenged in bill of exceptions No. 18 was seated. The motion was grounded on alleged prejudicial statements made during the voir dire examination of this juror.
An examination of the record does not disclose prejudicial remarks from any source. The voir dire concerned whether the juror had an opinion as to guilt or innocence, whether he had knowledge of the events in question, whether he had discussed these events. The entire voir dire is composed of proper questions and answers without the juror divulging any specifics as to his opinions or knowledge which may have been prejudicial.
This bill is without merit.
Bill of Exceptions No. 20
This bill of exceptions was reserved when the trial court overruled defendant's challenge for cause of juror, C. R. Anthony. The challenge was based upon prior employment of the district attorney by the juror in legal matters.
On voir dire the juror stated that the district attorney had represented him as well as other landowners with regard to Toledo Bend; that he had in addition received legal advice on other minor matters, but that it had been five or six years since the last employment; that he had never regularly employed the district attorney. He also replied negatively to a direct inquiry *325 as to whether the relationship would affect his verdict.
C.Cr.P. 797, in pertinent part, provides:
"The state or the defendant may challenge a juror for cause on the ground that:
"(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict."
Refusal to excuse this juror for cause cannot be said to be an abuse of the discretion granted the trial court in determining whether the relationship would influence the juror's verdict. State v. Flucas, 262 La. 625, 264 So.2d 586 (1972); State v. Square, supra; State v. Reese, 250 La. 151, 194 So.2d 729, cert. denied, 389 U.S. 996, 88 S.Ct. 485, 19 L.Ed.2d 495.
This bill is without merit.
Bills of Exceptions Nos. 21 and 24
Bill of exceptions No. 21 was reserved when the trial court refused a request by the defense that the State specify the number of inculpatory statements that would be adduced at trial.
Bill of exceptions No. 24 was reserved when the statements were allowed into evidence.
For the reasons given in State v. Richmond, 278 So.2d 17, 23 (La.1973), we find these bills to be without merit.
Bill of Exceptions No. 22
This bill of exceptions pertains to the overruling of an objection to the introduction of a .38 caliber pistol into evidence. The objection was grounded on the lack of a proper foundation for introduction of the evidence.
Mr. Hugh Bennett, Jr., the deputy sheriff who arrested the defendant, testified that a .38 caliber S & W pistol, serial number 310136, was found in the room where the defendant was arrested. He also testified that the gun was turned over to the sheriff. The sheriff testified that he received a pistol of the above description from Bennett and that the serial number matched that of a weapon owned by the Adamses. The son of the victims testified that the pistol displayed was owned by his father.
As this court held in State v. Isaac, 261 La. 487, 260 So.2d 302 (1972):
"Before the admission of an object in evidence, a foundation must be laid showing that it is related to the case. The foundation testimony may consist of visual identification of the object by witnesses or by establishing a continuous chain of custody from the seizure of the object to its introduction in evidence at the trial. For admission, it suffices if the testimony establishes that it is more probable than not that the object is connected with the case. A preponderance of the evidence is sufficient. State v. Coleman, 254 La. 264, 223 So.2d 402 (1969); State v. Martin, 250 La. 705, 198 So.2d 897 (1967); State v. Bertrand, 247 La. 232, 170 So.2d 386 (1965)."
The foundation laid for the introduction of the evidence in the present case was at least sufficient to meet this test.
This bill is without merit.
Bill of Exceptions No. 27
This bill of exceptions was reserved when the trial judge refused to give the following special charge:
"A jury should never convict a defendant upon the unsupported testimony of an accomplice, unless it believes the unsupported testimony beyond a reasonable doubt."
"It is well settled that the court is not required to instruct the jury on abstract principles of law, but only those wholly pertinent or applicable to the facts of the case under consideration." (Emphasis *326 added). State v. Johnson, 250 La. 85, 193 So.2d 794 (1967).
The charge was not wholly pertinent to the facts. The evidence did not consist solely of the unsupported testimony of an accomplice. The ruling was correct.
This bill lacks merit.
Bill of Exceptions No. 28
This bill of exceptions was reserved when the trial judge denied defendant's motion for a new trial. The motion was grounded on prior bills of exceptions reserved and an allegation that the State's use of challenges for cause and peremptory challenges effected a prejudicial exclusion of Negroes from the jury.
A motion for a new trial based on an allegation that the verdict is contrary to the law and the evidence as shown in bills of exceptions presents nothing for review where the bills of exceptions have been considered and found to be without merit. State v. Crockett, 262 La. 197, 263 So.2d 6 (1972); State v. Williams, 262 La. 160, 262 So.2d 507 (1972). However, bill of exceptions No. 26 was reurged by the motion for a new trial; since this bill was neither briefed nor argued, we did not consider it previously, but will do so now as part of bill of exceptions No. 28.
The bill was reserved when the trial judge denied a motion for a recess, made after the State had rested, based on the absence of the only defense witness. A recess was requested until 10:00 a. m. the following day, for the purpose of permitting the defense to ascertain if the witness had been served and whether that witness would be available on the following day.
The grant or denial of a recess is largely within the well founded discretion of the trial court. State v. Cripps, 259 La. 403, 250 So.2d 382 (1971); State v. James, 246 La. 1033, 169 So.2d 89, reversed on other grounds, 382 U.S. 36, 86 S.Ct. 151, 15 L.Ed.2d 30. Under the present facts where the defense did not make a showing of a compelling reason for granting a recess, at the time the motion was made, it cannot be said the trial court abused its discretion by refusing the recess.
Additionally, the defendant alleged that the State used peremptory challenges and challenges for cause to eliminate Negroes from the jury to his prejudice.
The challenges for cause were based on a legally sufficient reason, refusal to bring in a guilty verdict with capital consequences, under our law. State v. Hayes, 271 So.2d 525 (La.1973); State v. Cripps, 259 La. 403, 250 So.2d 382 (1971); State v. Strong, 256 La. 455, 236 So.2d 798 (1970). There is nothing to indicate that the challenge to any juror was based on anything other than the responses made by the juror on voir dire.
A peremptory challenge is the statutory right to reject a given juror without disclosure of reason or motive. As such, the exercise of peremptory challenges is without the control of the court and is not subject to judicial review. State v. Rossi, 273 So.2d 265 (La.1973); State v. Smith, 263 La. 75, 267 So.2d 200 (1972); State v. Square, supra.
C.Cr.P. 851 provides:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded."
No such showing has been made in this case. The trial court properly overruled the motion for a new trial.
This bill is without merit.
The conviction is affirmed for the reasons assigned. The death sentence is annulled and set aside and the case is remanded to the district court for the imposition of a sentence of life imprisonment, according to law. State v. Franklin, 263 La. 344, 268 So.2d 249 (1972).
*327
 APPENDIX
 VALERY McDONALD
 having already been sworn on his voir dire examination, was examined
 and testified as follows:
 DIRECT EXAMINATION
 BY MR. SELF:
Q Mr. McDonald, do you believe in the principle of presumption of innocence
 that our law affords to a defendant in a criminal case that he is
 presumed innocent until proved guilty by evidence sufficient to convince
 you beyond a reasonable doubt?
A Yes, sir.
Q Are you acquainted with Willie Richmond, the defendant?
A No, sir.
Q Were you acquainted with Mrs. Vera Adams or her husband, James
 F. Adams of Mansfield?
A Well, I knew the husband.
Q Did you know him well or just a casual acquaintance?
A Just a casual acquaintance.
Q You didn't know Mrs. Adams?
A No.
Q Where do you live, Mr. McDonald?
A Mitchell.
Q Where?
A At Mitchell.
Q Can you accept the instructions that the Judge will give you as to the
 law that applies to this case?
A Yes, sir.
Q And will you follow those instructions?
A Yes, sir.
Q If you are accepted as a juror, will you base your verdict solely on the
 evidence that will be presented in this case and the instructions of the
 judge as to the law that applies to the case?
A Yes, sir.
Q Do you have any fixed opinion as to guilt or innocence in this case at
 this time?
A No, sir.
*328
Q Can you listen to the evidence carefully and give this defendant a fair
 and impartial hearing?
A Yes, sir.
 MR. SELF: I tender.
 CROSS EXAMINATION
 BY MR. BROWN:
Q Mr. McDonald, you live in the Converse area?
A Yes, sir.
Q That is in the northern part of Sabine Parish?
A Yes, sir.
Q How far is that from the DeSoto Parish line?
A About 11 miles.
Q What business are you in?
A I work at Hendrix Manufacturing Company.
Q In Mansfield?
A Yes, sir.
Q And you are up there daily then?
A Yes, sir.
Q In your employment, you are, of course, acquainted with a number of
 people from Mansfield and vicinity, is that right?
A Yes, sir.
Q Have you heard or had discussions with these people about this case?
A Well, I have heard about it and I have also talked with others about it
 that talked with me about it.
Q Did they go into details about the case, attempt to tell you how it happened
 or anything like that?
A Yes, sir, they tried to, but whether they knowed or not, I don't know,
 what they were talking about.
Q From anything that was said in these discussions have you formed any
 opinion as to how you think it happened or the facts of the case?
A As far as knowing the true facts, I don't know them.
Q What was revealed in these discussions with persons in that area
 would that have an effect on your considering this case?
A No, sir. I would have to hear the facts and that's all I could go on.
Q Do you have relatives in DeSoto Parish?
*329
A Well, my wife's got a lot of people up there.
Q In the Mansfield area?
A Yes, sir.
Q Do you all visit with these relatives often?
A Not real often.
Q Are you still employed at Hendrix?
A Yes, sir.
Q You are there daily?
A Yes, sir.
Q When is the last time that you can recall hearing anything about the
 case?
A When they had his trial in Mansfield.
 MR. BROWN: If it please the Court,
 I would have to challenge him for cause
 on that basis.
 THE COURT: He never has expressed
 anything except general publicity. Unless
 that general publicity has caused him to
 reach some state of mind or he has formed
 an opinion, that is what we ought to direct
 ourselves to. It isn't the fact of publicity,
 it's the effect of the publicity on his mind.
 Mr. Brown, you will have to see if he has
 formulated an opinion from all the people
 he has talked to, all that he has heard.
 MR. HARRIS (Continuing on cross of Mr. McDonald)
Q Did you hear the result of the trial in Mansfield?
A Yes, sir.
Q Did you attend that trial?
A No, sir.
Q As a result of that trial, have you formed an opinion in this case?
A No, sir.
Q You know what the verdict was, don't you?
A Yes, sir.
Q Has that caused you to form an opinion in this case?
A No, sir.
*330
Q Do you know what case they were trying in Mansfield?
A Yes, sir.
Q What was the case?
A Her husband.
 BY MR. BROWN:
Q You don't think that being in Mansfield daily and hearing all this that
 you have heard about what happened up there has influenced your mind
 in any way in regards to this case?
A Well, if I had to make an opinion on what I have heard, I could make
 one but I can't make one now until I hear exactly the way it was.
 THE COURT: Mr. McDonald, what
 Counsel is trying to ascertain from you if,
 with all your knowledge, from whatever
 the source, whether with direct contacts
 with friends, relatives and fellow employees,
 reading newspaper accounts or by radio or
 T.V., or any and all sources, your general
 acquaintance with this case and this particular
 accused, Willie D. Richmond, has
 caused you to formulate an opinion as to
 his guilt or innocence at this time? Do you
 have an opinion as to his guilt or innocence
 at this time?
 PROSPECTIVE JUROR: Upon what I
 have heard, whether it is so or not?
 THE COURT: Do you have an opinion
 at this time as to his guilt or innocence?
 PROSPECTIVE JUROR: Yes, sir.
 THE COURT: You have an opinion at
 this time?
 PROSPECTIVE JUROR: Yes, sir,
 whether it is so or not.
 THE COURT: Only you know when
 you go in there, if you are selected as a
 juror in this case, keep in mind that each
 juror has got to arrive at his own special
 approach to the case, and he must make up
 his mind as to whether he personally thinks
 the man is innocent or guilty and whether
 or not the State has discharged its whole
 duty or not. You would be called upon to
*331
 remove from your mind any prior knowledge
 about the case which might influence
 you. Now in going into deliberations of a
 trial, you would be expected to sit down
 with your fellow jurors and discuss, review
 the case, after I, the Judge, charge you after
 you hear all the evidence. Then you would
 be required to go in that jury room and set
 down with your fellow jurors and to try to
 reach a verdict. You are not called upon
 to evaluate what happened anywhere else
 or what anybody might have said. You
 have to arrive at your verdict here by what
 has been presented by the State in this case.
 We have no way of knowing what the State
 is going to show. You are called upon to
 do one grave, solemn act, to try to reach a
 fair and impartial verdict just as clearly as
 you can under our consciences and ability
 to understand. Only you know whether
 outside influences or anything you may have
 heard would influence you. Only you could
 know that at this time as you approach
 this solemn responsibility. You are human,
 and I'll say this, it is not weakness
 on your part or anything else. We want
 to be sure and positive in our minds and I
 know that you likewise would want to be
 sure of it because it is something you will
 have to live with the rest of your life. So
 if there is a chance, even remote, that what
 you have heard and your knowledge, that
 it might influence you, I think that you
 ought to disclose it at this time.
 PROSPECTIVE JUROR: I think it
 might would have to a certain extent.
 THE COURT: Now gentlemen, I have
 explained that as best I can and he has
 given me an answer.
 MR. SELF: I would like to ask him a
 question or two.
 THE COURT: Go ahead.
 RE-DIRECT EXAMINATION
 BY MR. SELF:
Q Mr. McDonald, the people with whom you have discussed or were talking
 about this around you, were they people as far as you know, knew
*332
 no more about it that you did? They were not eye witnesses or anything,
 were they?
A No, sir, they was just like me, just talking.
Q Just community talk? You have indicated several times in your answers
 that you do not know whether what they told you represented
 the true facts or not?
A That's right.
Q You, I, or anyone, would gain an impression in talking about something?
A Yes, sir.
Q I think you have tried to indicate this already, but despite the talk
 that you have heard and any impression you might have in your mind,
 if a different version comes out of this trial, can you put aside what
 you have already heard about this case and accept the evidence and
 the facts developed in this trial and base your verdict on the evidence
 from this trial?
A I would have to to do right.
Q And you feel honestly that you can do that?
A. Yes, sir, I can do it.
Q In your own mind you are able to distinguish between what you have
 already heard and the impression you got from that, and distinguish
 that from the facts and evidence, the hard evidence that will come out
 in this trial as to what actually happened as well as it can be shown?
A Yes, sir.
Q You can distinguish between the two in your own mind?
A Yes, sir.
Q You will base your verdict on the evidence that comes out of this trial
 and the law that the judge will instruct you?
A Yes, sir.
Q And you feel under those circumstances that you can give this defendant
 a fair and impartial trial, solely from evidence in the trial, regardless
 of what you may have already heard?
A Yes, sir.
 MR. SELF: Re-tender.
 RE-CROSS EXAMINATION
 BY MR. BROWN:
Q These people, how long have you been working at Hendrix?
A Five and a half (5½) years.
*333
Q Now these people that you discussed the case with, have they been
 working there about the same length of time?
A Well, one of them is the same as me and rest of them lots younger.
Q They live there in Mansfield?
A Yes, sir.
 THE COURT: Mr. McDonald, in the
 course of any of your conversations with
 anybody, have you personally ever expressed
 an opinion as to the guilt or innocence
 of this accused, Willie D. Richmond, that
 you can recall?
 PROSPECTIVE JUROR: Yes, sir, upon
 what I have heard.
 THE COURT: You have publicly expressed
 an opinion; I mean, other people
 have heard you say to the best of your
 recollection that you believed he was innocent
 or guilty? You have made public
 statements to others that you believed one
 way or the other about his guilt or innocence?
 Have you that you can recall?
 PROSPECTIVE JUROR: No, sir, I
 can't but I heard about it happening and
 heard about how they caught him and I
 heard the way it come out in Mansfield,
 the trial in Mansfield.
 THE COURT: Now having that knowledge,
 has that caused you to reach a pretty
 firm belief about his guilt or innocence?
 PROSPECTIVE JUROR: Well, the way
 it come out in Mansfield, it's got a little
 leaning on my mind.
 THE COURT: Have you talked with
 people who were fairly conversant with
 the proceedings or the proceedings anywhere?
 PROSPECTIVE JUROR: No, sir, I
 don't know much about that.
 THE COURT: No official or anything?
 PROSPECTIVE JUROR: No, sir.
*334
 THE COURT: Just people like yourself?
 Because we are going to leave it up to
 you. Of course, I have to be convinced. I
 go back and I ask you the question, you
 will not only dofollow the instructions
 that I give you, but hear all the evidence,
 weigh all the evidence produced here and
 then apply the law as I charge you? If
 you can declare to us, then do so. Can you
 disregard anything or any impression or
 conclusions that you may have even entertained
 prior to coming here today and
 take this case, listen carefully to the evidence,
 if you are selected as a juror, the
 charge of the court, and reach a fair and
 impartial verdict to the best of your ability
 without calling upon any other information?
 Can you do that?
 PROSPECTIVE JUROR: Yes, sir, I
 believe I can.
 MR. BROWN: Your Honor, we would
 still have to challenge for cause.
 THE COURT: I am going to rule at
 this time that he is qualified to serve and
 direct that he be administered the oath.
 MR. BROWN: We reserve Exception
 No. 18, and I would like to make a motion
 which I would like to make outside
 of the presence of the jurors or prospective
 jurors.
NOTES
[1] See, appendix for the transcript of the voir dire examination of this juror.