345 So.2d 446 (1977)
STATE of Louisiana ex rel. Simon SMITH, Jr.
v.
C. Paul PHELPS, Warden, Louisiana State Penitentiary.
No. 58457.
Supreme Court of Louisiana.
April 11, 1977.
Rehearing Denied May 13, 1977.
*447 Robert Glass, New Orleans, for plaintiff-relator.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Don K. Carroll, Dist. Atty., S. E. Lee, Jr., Asst. Dist. Atty., for defendant-respondent.
SUMMERS, Justice.
Simon Smith, Jr., was charged on June 2, 1973 by affidavit in the Mayor's Court of the town of Winnsboro in Franklin Parish with aggravated assault, displaying dangerous *448 weapons in a public place and disturbing the peace. The Winnsboro ordinances upon which these charges are based provide in pertinent part as follows:
"Article 5. Assault:
"The attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery is assault ...." Ordinance No. 473.
"... it shall be unlawful for any person to draw, display, present or exhibit with intent to commit any crime or misdemeanor, or to intimidate any person, a pistol, gun, knife or any other dangerous weapon within the corporate limits of the Town of Winnsboro ..." Ordinance No. 332.
"Article 13. Disturbing the Peace:
"Is the doing of any of the following in such a manner as would forceably disturb or alarm the public:
(1) Engaging in a physical encounter; or
(2) Using of any unnecessarily loud, offensive, or insulting language; or
(3) Appearing in an intoxicated condition;
(4) Engaging in any act in a violent and tumultuous manner by any three or more persons; or
(5) Interruption of any lawful assembly of people;
or
(6) Commission of any act in such a manner as to unreasonably disturb or alarm the public." Ordinance No. 473.
After trial in the Mayor's Court on June 25, 1973 Smith was found guilty and sentenced to pay a fine of $35 or serve 30 days imprisonment for assault; $75 or 60 days for displaying a dangerous weapon; and $35 or 30 days for disturbing the peace, plus 30 days in jail. There was no transcript of these proceedings; no application for writs was taken from the conviction and sentence; and, the sentence having been executed, the matter became final.
Thereafter, on January 29, 1974 the District Attorney charged Simon Smith, Jr., by bill of information with kidnapping Shirley Ann White in violation of Section 45 of Title 14 of the Revised Statutes, which provides in pertinent part:
"A. Simple kidnapping is;
(1) The intentional and forcible seizing and carrying of any person from one place to another without his consent; or
. . . . .
"B. Whoever commits the crime of simple kidnapping shall be fined not more than two thousand dollars or be imprisoned, with or without hard labor, for not more than five years, or both."
In a trial by jury in the Fifth Judicial District Court on April 8, 1974 defendant was found guilty as charged and sentenced to imprisonment for four years at hard labor and incarcerated in the State Penitentiary.
When Smith complained that his appeal from the conviction of April 8, 1974 in the district court had not been perfected, we granted an out-of-time appeal. He also applied to the district court for a writ of habeas corpus based upon a contention that his trial in the district court for kidnapping placed him in jeopardy for the second time, because it was based upon the same offenses for which he was tried and convicted in the municipal court. When the application was denied in the district court, Smith applied here on August 28, 1975, and consideration of the application for habeas corpus was consolidated with the out-of-time appeal. We affirmed the conviction on appeal. However, finding that the trial judge had denied the application for habeas corpus without a hearing to determine the evidence, issues and testimony which were the basis for the convictions in the municipal court, the case was remanded for this purpose to the district court for an evidentiary hearing on Smith's application for a writ of habeas corpus. State v. Smith, 323 So.2d 797 (La.1975).
On remand an evidentiary hearing was held in the district court on March 22, 1976 to determine whether the evidence, issues and testimony in the municipal court trial of June 25, 1973 were such that double *449 jeopardy occurred when Smith was tried for kidnapping on April 8, 1974. Considerable difficulty was experienced in an effort to reconstruct the evidence and testimony offered almost three years before at the municipal court trial. However, the witnesses who testified at the June 25, 1973 trial, and who were available, testified at the hearing. Smith was present, represented by counsel and testified.
After hearing the witnesses the trial judge decided:
"If in the city court there was any evidence of kidnapping it was not an essential part of the charge for which he was being tried in the city court. In the assault charge, an assault is not an essential element of the kidnapping charge. The gravamen of the kidnapping is the asportation of one person against his will to another placethe transportation of one person against his will from one place to another. That was not an essential element of the assault charge. When the gun was pulled in the store that could constitute an assault. That was all that was necessary. In my opinion double jeopardy would not apply in this case.
For these reasons the application for habeas corpus is denied."
Smith then applied here for review of the trial court ruling, and the case has been briefed and argued.
A review of the evidence adduced at the hearing to reconstruct the municipal court record on the charges of assault, displaying a dangerous weapon and disturbing the peace and the evidence heard in the district court on the kidnapping charge results in the following findings:
In mid-afternoon on June 2, 1973 Shirley Ann White, the estranged common-law wife of the defendant Simon Smith, Jr., was shopping in the T. G. & Y. store in the town of Winnsboro. She was accompanied by her mother Iola Grimble and her sister Carolyn Thomas. Carolyn was waiting in the car outside while Shirley Ann and her mother were at a jewelry counter in the store. Smith entered the store and confronted Shirley Ann. In a conversation which ensued Smith demanded that Shirley Ann come with him, and when she refused he grabbed her around the neck, drew his pistol and pointed it at her head as he forced her through the front door and out into the parking lot where his car was parked. When Shirley Ann's mother sought to intercede, Smith pointed the gun at her and threatened to shoot if "anyone moved." When this disturbance began the store manager was summoned by the clerks, but before Smith could be detained he had succeeded in forcing Shirley Ann outside, all the while maintaining his hold as he backed to his car in order that he might watch for and guard against possible pursuers. The store manager then phoned the police.
When he had forced Shirley Ann into the car he drove off at a high rate of speed to the town of Waterproof, then through Ferriday to Clayton where he parked the car and compelled her to spend the night in the car with him.
Protection against double jeopardy is guaranteed by the Federal and State Constitutions. U.S.Const. amend. V; La. Const. art. I, § 15 (1974); State v. Cotton, 341 So.2d 362 (La.1976); State ex rel Wikberg v. Henderson, 292 So.2d 505 (La.1974). It is the guarantee against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction; and against multiple punishments for the same offense.
The principle is stated in Article 591 of the Code of Criminal Procedure:
"No person shall be twice put in jeopardy of life or liberty for the same offense, except when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant."
and by the terms of Article 596,
"Double jeopardy exists in a second trial only when the charge in that trial is: (1) Identical with or a different grade of the same offense for which the defendant *450 was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial."
Louisiana applies the "same evidence" test in determining if a second trial constitutes double jeopardy. This test holds that offenses are the same if the elements required to support conviction upon one of the offenses would have been sufficient to warrant conviction upon another. That is to say, where the gravamen of the second offense is essentially included within the offense for which first tried the second prosecution is barred because of former jeopardy. State v. Cotton, 341 So.2d 362 (La.1976); State v. Smith, 323 So.2d 797 (La.1975); City of Baton Rouge v. Jackson, 310 So.2d 596 (La.1975); State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La.1974).
The "same evidence" rule is not intended to indicate that an offender, who goes on a crime spree and violates more than one criminal statute within a short time span, cannot be prosecuted for more than one offense without violating the prohibition against double jeopardy. State ex rel Wikberg v. Henderson, supra.
Examples of valid prosecutions for multiple crimes committed within a narrow time span may be found in this Court's decisions. E. g. State v. Cotton, 341 So.2d 362 (La. 1976); State v. Pettle, 286 So.2d 625 (La. 1973); State v. Richmond, 284 So.2d 317 (La.1973); State v. Ysasi, 222 La. 902, 64 So.2d 213 (1953); State v. Cannon, 185 La. 395, 169 So. 446 (1936).
The true test to be applied in the case at bar is set forth in State ex rel. Wikberg v. Henderson, supra. The test is "where the gravamen of the second offense is essentially included within the offense for which first tried, the second prosecution is barred because of the former jeopardy."
The gravamen of the assault charge in the district court was established when Smith grabbed Shirley Ann around the neck. The gravamen of the charge that Smith displayed a dangerous weapon in a public place was proven when he drew his pistol and threatened Shirley Ann's mother. Disturbing the peace occurred when his actions in the store, forcing Shirley Ann to the outside, alarmed the clerks and the manager.
The essential element of the kidnapping charge "carrying of any person from one place to another without his consent", La. Rev.Stat. 14:45A(1), occurred when Smith left the store with Shirley Ann, forcing her into his car without her consent, and driving her to Clayton, many miles away.
If the facts we have found were supported by the evidence at both trials, despite testimony at the hearing that the trial in municipal court pertained solely to the occurrences within the store, the same evidence was not used to convict in both courts. Assuming that there may have been evidence of kidnapping at the municipal court trial, not relevant or essential to the charges there, the State was not for that reason barred from prosecuting for the offense of kidnapping which the irrelevant evidence did support. The evidence used to prove kidnapping was, therefore, unnecessary to prove violations of the municipal ordinances. And, on the other hand, it was not necessary to use any of the evidence supporting the activities offensive to the municipal ordinances to establish the kidnapping. Occurrences subsequent to leaving the store proved the "intentional and forcible seizing and carrying of [Shirley Ann] from one place to another without [her] consent." La.Rev.Stat. 14:45A(1)
For the reasons assigned, the ruling of the trial judge denying the application for a writ of habeas corpus based upon a claim of double jeopardy is affirmed.
TATE, J., dissents and assigns written reasons.
DIXON and CALOGERO, JJ., dissent.
TATE, Justice, dissenting.
The defendant Smith was initially convicted of aggravated assault, displaying *451 dangerous weapons in a place of business, and disturbing the peace (all violations of municipal ordinances), and sentenced to serve six months in jail. Subsequently, arising out of the same conduct, he was charged with simple kidnapping and sentenced to four years in the state penitentiary.
The issue is whether the subsequent felony conviction for the identical conduct for which punished by misdemeanor penalties offends double jeopardy provisions of the state and federal constitutions. As we noted in State v. Didier, 262 La. 364, 263 So.2d 322 (1972), the identical conduct cannot be twice prosecuted by the state by labeling it as separate crimes.
The majority cites jurisprudence to the effect that, without offending double jeopardy, prosecutions may be had for multiple crimes committed within a limited time span. See State v. Nichols, 337 So.2d 1074 (La.1974). The majority likewise correctly notes that the test is "where the gravamen of the second offense is essentially included within the offense for which tried, the second prosecution is barred because of the former jeopardy."
The majority then finds that the essential element of the subsequent kidnapping charge, "[the] carrying of any person from one place to another without his consent", did not occur until the accused left the store with the victim, forced her into his car without her consent and drove her to Clayton, several miles away. The majority therefore includes that this asportation element did not form part of the evidence by which the accused was convicted of the prior charges.
Nevertheless, as the majority itself indicates in its statement of the facts, the asportation in fact was part of the evidence upon which the accused had earlier been criminally punished for the identical conduct: "The gravamen of the assault charge in the district court was established when Smith grabbed Shirley Ann around the neck. The gravamen of the charge that Smith displayed a dangerous weapon in a public place was proven when he drew his pistol and threatened Shirley Ann's mother. Disturbing the peace occurred when his actions in the store, forcing Shirley Ann to the outside, alarmed the clerks and the manager." (Italics ours.)
Smith committed the crime of kidnapping "carrying of any person from one place to another without his consent"at the least by the time he had forced the victim to leave the store. Had he been then arrested (instead of after he drove her to Clayton), he was guilty of kidnapping, no less than when he was apprehended several miles away.
The earlier convictions of assault, displaying a dangerous weapon, and disturbing the peace were thus the components of the crime of kidnapping for which, dissatisfied with a six month sentence, the state now reprosecutes the accused in order to send him to the penitentiary.
Our constitutional prohibitions against placing an accused in double jeopardy historically exist to protect an individual from re-prosecution or re-punishment by the state for the identical criminal conduct for which he has previously been placed in jeopardy, whether the occasion of the second prosecution is governmental dissatisfaction with an acquittal on the first prosecution, or whether it results from governmental dissatisfaction with a less severe criminal penalty for the first conviction than desired by the governmental prosecutors.
I therefore respectfully dissent.

ON MOTION FOR REHEARING
PER CURIAM:
In his motion for rehearing, defendant interprets the language of the majority opinion as holding that the segment of the asportation of the kidnap victim occurring within the store was an essential element of the municipal disturbing the peace charge.
The principal language relied on is as follows:
"Disturbing the peace occurred when his actions in the store, forcing Shirley Ann to the outside, alarmed the clerks and the manager." (Emphasis supplied.)
*452 Although the language is ambiguous, we did not intend to state that asportation of the person was an essential element of disturbing the peace. More precisely stated, the thrust of the language was that the violent actions of the defendant in the store alarmed the clerks and the manager.
The rehearing is denied.
TATE and CALOGERO, JJ., are of the opinion a rehearing should be granted.
DIXON, J., dissents from the denial.
The Per Curiam does not correct the inaccuracy of the majority opinion.